[S. F. No. 6677. Department Two.—June 20, 1914.]

JOSEPHINE A. PHELPS, Respondent, v. JOHN H. GRADY, as Special Administrator of the Estate of Phoebe W. Daughaday, Deceased, Appellant; FREDERICK DAUGHADAY et al., Interveners and Appellants.

ESTATE OF DECEASED PERSON—VESTING OF TITLE IN HEIRS OR DEVISEES—CONVEYANCE OF TITLE WITHOUT ADMINISTRATION.—Title to the real estate of a deceased intestate vests immediately in his heirs, of a testate in his devisees. That title they may convey without administration, and this they may do whether they be domestic or foreign heirs or devisees.

ID.—CONVEYANCE BY HEIRS OF NONRESIDENT INTESTATE—ANCILLARY ADMINISTRATION UNNECESSARY.—The heirs of a nonresident intestate leaving real estate in California, may, subject to the right of possession in a local administrator for the payment of the claims of

local creditors, convey complete title so far as they are concerned to such real estate without ancillary administration in the state of California.

FALSE REPRESENTATIONS—HONEST EXPRESSION OF OPINION—FALSE OPINION MAY CONSTITUTE DECEIT.—Mere expressions of opinion honestly made are not actionable, but a false statement of an opinion or a false opinion expressed to one entitled to rely upon it may form the basis of an action for deceit, like any other misrepresentation of fact.

ID.—FALSE OPINION AS TO VALUE OF ESTATE—REPRESENTATIONS BY WIDOW TO BENEFICIARIES UNDER WILL OF HUSBAND.—False representations by a widow of a testator as to the value of the interest in lands of his estate that would pass to beneficiaries under his will, knowingly made for the purpose of inducing a conveyance of such interest to herself, and which were believed and relied upon by the beneficiaries in the execution of such conveyance, constitute deceit warranting the annulment of the conveyance.

ID.—LACHES—DISCOVERY OF FRAUD.—Frauds are infinite in their variety, and while the rules of equity apply equally to all, when the doctrine of laches or stale demand is invoked, and the question involved is why was not the discovery of the fraud earlier made, each case must be interpreted and construed under its own facts.

ID.—DUE DILIGENCE TO DISCOVER FRAUD—ABSENCE OF INQUIRY—DELAY OF SEVEN YEARS BEFORE COMMENCING ACTION.—An action to set aside such conveyance because of its fraudulent procurement, commenced upwards of seven years after the perpetration of the fraud, will be deemed barred by laches, if the plaintiffs, with every means of information open and patent before them, omitted during that entire period to make any inquiries as to the value of the land conveyed, and failed to show not only due diligence but any diligence in seeking to discover whether or not they had parted with their property at a fair valuation.

APPEAL from a judgment of the Superior Court of San Mateo County, from an order refusing a new trial, and from an order denying leave to file a complaint in intervention. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Thomas E. Curran, and Francis Dunn, for Appellants.

Ross & Ross, Walter H. Linforth, and W. C. Sharpstein, for Respondent.

HENSHAW, J.—John H. Grady was appointed special administrator of the estate of Phoebe W. Daughaday, deceased. Josephine A. Phelps, plaintiff herein, brought this action against him to quiet her title to certain real estate in the county of San Mateo. The heirs of Phoebe W. Daughaday, who were also beneficiaries under her will, sought to intervene, assserting an interest in the land in their ancestor, Phoebe W. Daughaday, which interest was devised to them by her will, and with which interest they allege they were fraudulently induced to part, selling and conveying it to plaintiff in reliance upon certain fraudulent representations made by her. The facts in detail are set forth in S. F. No. 6668, this day decided. (*Estate of Daughaday, ante,* p. 63 [141 Pac. 929].) A decree of partial distribution given in the matter of the estate of Timothy Guy Phelps, under which decree the land in controversy was distributed to plaintiff, was introduced in evidence, as well as the final decree of distribution. Many grounds of attack are advanced against the validity of the decree of partial distribution. They need not be noticed, for, if the result of them is all that appellant contends for, so that the decree should be considered as absolutely void and thus conveying no title, the fact then would be that all of the property remained in the estate until the decree of final distribution, which is not assailed, and which distributed all of the property to Mrs. Phelps. Again it is argued that by force of the will of Timothy Guy Phelps, deceased, title to real estate vested in Phoebe W. Daughaday, and that the probate court of Kansas had no power to administer on and dispose of real estate situate in California. Wherefore, so runs appellant's argument, the conveyance by the heirs and beneficiaries under the will of Phoebe W. Daughaday to Mrs. Phelps of their interest through the estate of Phoebe W. Daughaday in the estate of Timothy Guy Phelps, was abortive and void. But such, however, is not the law. Title to the real estate of a deceased intestate vests immediately in his heirs, of a testate in his devisees. That title they may convey without administration, and this they may do whether they be domestic or foreign heirs or devisees. The heirs of a nonresident intestate leaving real estate in California may convey complete title so far as they are concerned to such real estate without ancillary administration in the state of California. True, the title thus conveyed is not a perfect title, in that the title will

always be subject to the right of possession in a local administrator for the payment of the claims of local creditors. But with this defect, the heirs who have deliberately parted with their title are not concerned and can find no fault. The probate court of Kansas in no sense undertook to administer upon lands in California. It had all of the heirs and beneficiaries under the will of Phoebe W. Daughaday before it, and it authorized them, on their request, to make conveyance to Mrs. Phelps of all of their interest in the estate of her husband. If the title thus derived by Mrs. Phelps was in any way incomplete or imperfect for lack of local administration, she and not her grantors was the one that suffered thereby. No case cited by appellant denies the power of the heirs or devisees so to convey their title. Indeed such a denial would be in the face of our express statutory law. All that such cases as *In re Pina,* 112 Cal. 14, [44 Pac. 332]; *Turner* v. *McDonald,* 76 Cal. 177, [9 Am. St. Rep. 189, 18 Pac. 262]; *Estate of Strong,* 119 Cal. 663, [51 Pac. 1078], and *Blair* v. *Hazzard,* 158 Cal. 721, [112 Pac. 298], declare upon this matter is that the title thus conveyed is still subject to administration, and is therefore and in this sense only not perfect.

A general demurrer to the answer of appellant, setting up the above mentioned fraud, and a general demurrer to the interveners' complaint, asserting the same fraud were sustained. This ruling presents the one serious question in this case. We waive consideration of certain minor objections of respondent, as that the special administrator, authorized to maintain or defend only such suits as might have been maintained by or against his testatrix, cannot present such a defense in this action, since his testatrix was not defrauded. We pass over also the consideration as to whether or not the heirs and beneficiaries under the will of Phoebe W. Daughaday could rightfully intervene at all in this action, and, conceding this right, come immediately to the question of the sufficiency of their complaint in intervention. In this they allege that in January, 1904, Josephine A. Phelps, plaintiff herein, opened negotiations with them by correspondence for the purchase of their interest in her husband's estate. She represented to them that the value of the estate was about ninety thousand dollars, and that the value of the entire portion of the estate devised and bequeathed to Phoebe W. Daughaday was only about $3333.33. They aver that these

representations were false and untrue and were known to Mrs.
Phelps to be false and untrue, and were made by her for the
purpose of deceiving them.  Certain other false representa-
tions are declared.  It is said that Mrs. Phelps represented
that on account of the condition of the estate distribution
could not be had for many years; and that the family allow-
ance of four hundred dollars a month decreed by the court
would, during the progress of the administration, consume a
large portion of the estate.  The interveners further allege
that Mrs. Phelps was the widow of their mother's brother and
that because of this relationship they believed that she would
deal with them in all respects fairly and justly, and that so
believing they relied upon these representations and parted
with their interest to her.  Respondent argues that the only
one of these allegations with any semblance of strength to
support an action for deceit is that which charges the misrep-
resentation as to the value of the estate and of Phoebe W.
Daughaday's interest therein.  And this it is urged, consid-
ering the nature of the estate and its problematical value,
must be construed as the expression merely of Mrs. Phelp's
opinion and not as the statement of a fact.  True of course
it is that expressions of opinion honestly made are not action-
able.  Equity has no concern with them.  But equally true
it is that a false statement of an opinion expressed to one
entitled to rely upon it may form the basis of an action for
deceit, like any other misrepresentation of fact.  (*Barron
Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, [126 Pac. 351];
*Henry* v. *Continental Bldg. etc. Assoc.,* 156 Cal. 680, [105 Pac.
960]; *Brandt* v. *Krogh,* 14 Cal. App. 39, [111 Pac. 275].)  The
complaint in intervention charges deceit upon this kind of
a false expression of opinion, and in this respect it sufficiently
states a cause of action.  But in this case the conveyance was
executed in 1904.  The decree of final distribution in the es-
tate of Timothy Guy Phelps was given in 1907.  This action
was commenced in 1912, and here for the first time interven-
ers are found asserting the right to avoid their conveyance
because of its fraudulent procurement.  Excepting upon a
proper showing touching their discovery of the fraud their
cause of action was barred.  One seeking relief under such
circumstances is held to stringent rules of pleading.  Says
the supreme court of the United States, in *Wood* v. *Carpen-
ter,* 101 U. S. 135, [25 L. Ed. 807]:

"In this class of cases the plaintiff is held to stringent rules of pleading and evidence, especially must there be distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether by reasonable diligence the discovery might not have been before made. . . . A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery it should be stated when it was made, what it was, how it was made and why it was not made sooner. . . . A party seeking to avoid the bar of a statute on account of fraud must aver and show that he used due diligence to detect it. . . . Concealment which will avoid the statute must go beyond mere silence. It must be something done to prevent discovery. . . . Concealment must be the result of positive acts. Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."

And this is the rule consistently adopted and adhered to in this state. (*Robertson* v. *Burrell*, 110 Cal. 578, [42 Pac. 1086] ; *Lady Washington Con. Co.* v. *Wood*, 113 Cal. 486, [45 Pac 809] ; *Simpson* v. *Dalziel*, 135 Cal. 603, [67 Pac. 1080] ; *People* v. *San Joaquin etc. Assoc.*, 151 Cal. 797, [91 Pac. 740].) The allegations of the complaint touching discovery are as follows:

"That interveners herein did not discover that the representations made to them by said Josephine A. Phelps, as alleged in paragraphs VII and VIII of this complaint in intervention were untrue nor did they nor any of them have any truthful information concerning the matters and subjects covered by said representations until about the month of October, 1911. That on or about the 1st day of October, 1911, said interveners were informed for the first time that some time in the year 1907 said Josephine A. Phelps had entered into a contract to sell a certain portion of the real estate of Timothy Guy Phelps, and a part of the real property described in the complaint herein at a price which seemed to indicate that the value of the entire estate of Timothy Guy Phelps, deceased, was in and during the year 1904 very much greater than had been represented to interveners as above related by said Jose-

phine A. Phelps. That thereupon said interveners made inquiry and investigation and were informed that in and during the year 1904 the estate of Timothy Guy Phelps, deceased, was of a value many times greater than $90,000.00.''

Frauds are infinite in their variety, and while the rules of equity apply equally to all, when the doctrine of laches or stale demand is invoked, and the question involved is why was not the discovery earlier made, each case must be interpreted and construed under its own facts. To illustrate, if A should employ B as a mining expert to express his opinion upon the probable value of a mine which he contemplated purchasing, and B should report as his opinion that the mine was of great value; and if, relying upon his opinion, A should purchase the mine, expend large sums of money thereon, and meet with failure as the result, he would have no cause of action against B for the latter's mistaken opinion. Years might elapse and A might never suspect, nor have occasion to suspect, that the opinion so given to him by B was fraudulent. If years thereafter he should come into possession of knowledge that B had conspired with the former owner of the mine to fraudulently represent its value, B's own opinion being that the property was valueless, here would be a clear case, under a proper pleading of these facts, of an active suppression of the fraud by the guilty parties, and a discovery of the facts made possible only under the indicated circumstances. In such a case A's right of action would unquestionably exist no matter how many years had elapsed before discovery was made possible. But no such case is here presented. The false representation it is asserted was as to the value of the lands of the estate, which lands were situated in a populous county adjacent to the city and county of San Francisco. The fact that the estate owned these lands is not only not questioned but is declared. While it is conceivable that a person under such circumstances might misrepresent to another at a distance the value of those lands, it is impossible that that person could have concealed from the grantors knowledge of the true value had the slightest inquiry been made. It cannot be said, therefore, and of course it is not alleged, that Mrs. Phelps ever did or attempted to do anything to conceal from these interveners knowledge of the true value of the land. If, under such circumstances, with every means of information open and patent before them, they may refuse

to make inquiries for seven years, they may do so for seventy. There is an absolute failure to show not only due diligence but any diligence in seeking to discover during all this intervening time whether or not they had parted with their property at a fair valuation. The fact that they lived at a distance is of course no excuse. They were under no other disability. Says the supreme court of the United States: ''Parties cannot thus, by seclusion from the means of information, claim exemption from the laws that control human affairs and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their *status* and condition and of the vicissitudes to which they are subject.'' (Case of *Broderick's Will,* 88 U. S. 503, [22 L. Ed. 599].) Herein the words of the circuit court in *Naddo* v. *Bardon,* 47 Fed. 782, are peculiarly apposite: ''The conclusion is almost irresistible that the complainant might, and he perhaps would, have continued to sleep quietly and peacefully upon his supposed rights had it not been for the quickening influences that have, within a comparatively recent period, materially appreciated the value of this property and brought it into prominence.'' Independently of any statute of limitation courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for laches in asserting them. (*Speidel* v. *Henrici,* 120 U. S. 386, [30 L. Ed. 718, 7 Sup. Ct. Rep. 610].) The interveners are clearly in this position, and for this reason the superior court was justified in finding that their complaint in intervention was without equity and in sustaining the general demurrer thereto.

The judgment appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.