[L. A. No. 22062. In Bank. July 31, 1952.]

JOHN J. McMAHON, Petitioner, v. STATE BAR OF CALIFORNIA, Respondent.

John J. McMahon, in pro. per., John F. Poole and R. Milton Smith for Petitioner.

Jerold E. Weil, Byron O. Smith and Albert E. Wheatcroft for Respondent.

THE COURT—The petitioner, John J. McMahon, seeks a review of a recommendation of the Board of Governors of the State Bar that he be suspended from the practice of the law for a period of six months. The Board of Governors adopted and approved findings of fact of a Local Administrative Committee.

The facts underlying the recommendation are as follows: One Rae S. Merrill died in Arizona in April, 1944, leaving property in California. Later in April the petitioner as attorney for Fred B. Merrill, a brother of the decedent, instituted proceedings for the administration of the estate, resulting in the appointment of Fred as special administrator. The petition for special letters of administration alleged on information and belief that the decedent had died intestate. The Local Administrative Committee and the Board of Governors found that the petitioner herein, who had prepared

but not signed the petition for special letters of administration, knew that a will had theretofore been executed and that he knew its contents including the identity of the beneficiaries and the executrix named therein, although he did not know it was actually in existence at the time of the decedent's death. The Board of Governors further found that the petitioner had information indicating that the allegations of intestacy on information and belief were not justified. This alleged infraction of the rules of professional conduct constitutes the basis of Count One of the charges placed against the petitioner.

Count Two charges that the petitioner had embarked upon a program of harassment consisting of a series of proceedings instituted to delay the appointment of the named executrix under the will of the decedent. Both the Local Administrative Committee and the Board of Governors found that the petitioner had not engaged in such a program, and this charge is not now urged by respondent.

Petitioner's client was removed as special administrator on October 18, 1945, and the named executrix was granted letters testamentary the following day. Count Three alleges, and the Local Administrative Committee and the Board of Governors found, that during the time that he was acting as attorney for the administrator the petitioner demanded and received payment from his client out of funds belonging to the estate sums totalling approximately $4,059.40 for extraordinary legal services and costs. The total assets of the estate amounted to the sum of $7,199.90. The findings recite that these payments were demanded and received "in bad faith" by the petitioner and without request for an order of the court or approval by the court, except as to the sum of $33.10, for which an order was obtained.

Two questions are presented: (1) Did the petitioner have sufficient information concerning the existence of a will which should forbid the allegations of intestacy which he caused to be presented to the court; and (2) did the petitioner exercise bad faith in demanding and accepting fees for extraordinary services without a prior order of the court?

If either or both of these inquiries are answered in the affirmative this disciplinary proceeding was justified. (State Bar Act, §§ 6067, 6068, 6103 and 6106.)

The petitioner contends that he has committed no infraction of the professional rules of conduct and that the facts do not support the findings and recommendations.

■ There is credible evidence that prior to the time of the filing of the petition for special letters of administration the petitioner had been informed of the execution of the will "a year or so before" by the decedent; that he was informed of the name of the attorney who had prepared the will and who had a copy in his files; that he had knowledge of the general contents of the will and that he knew of the person who had been given original possession of the will. The petitioner admits knowledge of the existence of a copy of the will but asserts a belief claimed to be reasonable that the will was no longer in existence; or that if it were it could not be probated as the testator was incompetent at the time of its execution; or that in any event the will was invalid and inoperative due to the claim of a pretermitted heir who would take as sole heir.

The petitioner had no affirmative knowledge of the destruction of the will. He relied on information that the special administrator and an attorney connected with the decedent's family did not know of the existence of a will after spending two hours in a search for one. He made no effort to ascertain the existence of the original will by inquiry of the one in whose possession it had been placed. The petitioner's insistence that he did not affirmatively know of the will avoids the fact that he had actual notice that one had been executed. He asserts that the only evidence of notice on his part of the existence of the will is the testimony of the complaining witness, the special administrator, and that this witness had been impeached. However, the petitioner's own testimony reveals that he relied upon knowledge that the will did not provide for a pretermitted heir in seeking to justify his conduct and he admits that he "knew of a copy of a will." He is not charged with knowledge of a will, but that he was "possessed of such information as should have placed him on inquiry as to the existence of a will . . ." It was charged that he caused to be filed the petition for special letters in which it was alleged under oath: "That due search and inquiry had been made to ascertain if said deceased left any will and testament, but none has been found, and according to the best knowledge, information and belief of your petitioner, said deceased died intestate."

■ The petitioner's contention that he could ignore the will due to its failure to provide for a person later determined to be a pertermitted heir, cannot be sustained. Even though the dispositive provisions of a will may be invalid the will

is operative if it merely appoints an executor; and is entitled to probate for purposes of administration of the estate. (*In re Hickman,* 101 Cal. 609, 613 [36 P. 118]; *Estate of Philippi,* 71 Cal.App.2d 127 [161 P.2d 1006].)

 The petitioner contends that he had no self-serving motive in withholding such knowledge as he had. His argument is, and the record reveals, that he was primarily interested in getting his client Fred Merrill appointed special administrator before Helen Hillin could obtain possession of the assets of the estate. Helen Hillin is a sister of Fred. She was also a sister of the decedent and had been named executrix in the will of which the petitioner had notice. Mrs. Hillin had gone to Arizona to attend the funeral of the decedent and was expected back shortly. It was in her possession that the will was reputed to have been placed. In prior litigation Fred had been appointed special administrator of the estate of Blanche Merrill, another sister, and had been unable to get possession of the assets of that estate due to the alleged wrongful appropriation of those assets by Helen Hillin. The petitioner contends that the prior conduct of Mrs. Hillin showed that she was an improper person to administer the estate of the decedent; that he procured the appointment of Fred Merrill as special administrator in order to protect the interests of the pretermitted heir; that the appointment of Fred facilitated proceedings in a pending action in which the petitioner was seeking to partition property jointly held by members of the Merrill family, and that it permitted Fred as administrator of the estate of the decedent to be made coplaintiff with Fred personally. Prior to this time the petitioner, who represented Fred in the partition suit against the other three then-living members of the family, had been unable to obtain service on the decedent who had been named as a defendant.

The foregoing considerations cannot serve as justification on the part of the petitioner for withholding from the court what knowledge he had concerning the existence of a will. In causing the allegation of intestacy to be alleged and presented to the court, he was, therefore, guilty of conduct denounced by the statute, and the first question must be answered in the affirmative.

Count Three in effect charges that the petitioner unjustifiably demanded and received from the special administrator fees for extraordinary services without a prior court order. Section 910, Probate Code, provides in part as follows:

"Attorneys for executors and administrators shall be allowed out of the estate, as fees . . . such further amount as the court may deem just and reasonable for extraordinary services."

Attorneys for special administrators are within the purview of the statute. (*Estate of Kafitz*, 51 Cal.App. 325, 330 [196 P. 790].) The petitioner did not seek or obtain an order of court authorizing the payment of the fees to him. He urges as justification that the amounts thereof were agreed upon by the special administrator and that he had an arrangement with the pertermitted and sole heir of the decedent for such payments. It is true that a large portion of the money so paid to the petitioner was in turn paid out by him to satisfy legitimate costs incurred in the interests of the estate and the pretermitted heir. It is also true, according to the record herein, that all payments out of the estate were made with the knowledge and consent of the pretermitted heir who eventually succeeded to the entire estate. However, she later brought an action against the petitioner and the special administrator jointly for misappropriation of funds and was successful in obtaining a judgment for the return to the estate of the sum of $3,750. The petitioner was not served in that action and the judgment was satisfied by the special administrator by payment out of his own funds. Thereafter the special administrator was instrumental in causing the present disciplinary proceedings to be brought.

The petitioner is not charged with receiving exorbitant fees. Certain it is, from the record, that whatever he received for his own use was not unreasonable compensation for the great amount of legal services rendered by him in good faith on behalf of the estate in a long series of legal actions and proceedings.

The petitioner urges, as further justification, that he consulted and was advised by other attorneys that his demand and acceptance of such fees were legally proper and that if he honestly believed that he was entitled to extraordinary fees without an order of court he should not be found guilty of bad faith in obtaining them. He relies upon the *Estate of Lankershim*, 6 Cal.2d 568, 571 [58 P.2d 1282], as authority for the proposition that an attorney may demand and receive fees for extraordinary services with the consent of all interested parties and without an order of court. In that case the court affirmed an allowance of fees in the following language: ". . . [T]he trial court found and fixed

the amount . . . of attorney's fees to be allowed Mr. Mc-Donald in the sum of $56,443.15, minus the sum of $10,000 which had been paid him on account of such fees prior to the filing of the accounts." No other reference is made in the opinion to the $10,000.

The petitioner says he also relied upon other authority. He cites 2 Bancroft Probate, page 831, section 444, where it is stated: "An executor or administrator, having funds of the estate in his possession, unquestionably has the physical power to pay funds to his attorney for services rendered by the latter . . . Moreover, . . . though he has made such payment with funds of the estate and without authority of the court . . . the attorney cannot be compelled to disgorge, the matter being wholly between the representative and the estate." He also refers to 33 Corpus Juris Secundum where it is said at page 1214 (citing *Ludwig* v. *Superior Court*, 217 Cal. 499 [19 P.2d 984], as supporting authority): "A representative need not secure permission of the court before employing counsel, nor need he secure judicial approval before paying counsel fees. He proceeds at his own risk, however, if he does not first obtain such approval." The petitioner urges that a sole heir may, under the law, deal with the property of an estate without administration and that the transactions, as to the heir, become final, citing *Phelps* v. *Grady*, 168 Cal. 73 [141 P. 926], and *In re Welch*, 110 Cal. 605 [42 P. 1089]. Whether the authorities relied upon by the petitioner sustain his position need not be and is not decided. It is enough to say that all of the circumstances here presented and considered are sufficient to rebut the inference of bad faith and to sustain the inference of good faith to which the petitioner is entitled under our statute. (Code of Civ. Proc., § 1963, subds. 1, 19, 33.)

It is concluded that the petitioner, as charged in Count One of the notice to show cause, and as found by the Board of Governors, had such information concerning the existence of a will of the decedent that he was not justified in representing to the court that the decedent had died intestate; that the charge of "harassment" contained in Count Two of the notice to show cause should be dismissed; that the charge of "bad faith" on the part of the petitioner in accepting the payment of fees for extraordinary services prior to an order of the court, as charged in Count Three, is not sustained by the evidence and should be dismissed. In view of the fact that Counts Two and Three should be dis-

missed, we conclude that the ends of justice will best be served by fixing 60 days as the time of suspension.

It is therefore ordered that Counts Two and Three of the notice to show cause be, and the same are hereby, dismissed. As to Count One it is ordered that the petitioner be suspended from the practice of law in this state for the period of 60 days after this order becomes final.

CARTER, J.—I dissent.

In my opinion the evidence is insufficient to show any misconduct on the part of petitioner or that he violated the rules of professional conduct of the State Bar of California in any respect, and I would, therefore, dismiss the entire proceeding against him.

Petitioner's application for a rehearing was denied August 28, 1952. Carter, J., was of the opinion that the petition should be granted.