[L.A. No. 30257. In Bank. Aug. 30, 1974.]

In re HERSCHELL REX ELLIS on Suspension.

**COUNSEL**

Clarence S. Hunt for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

**OPINION**

**THE COURT.**—Following his conviction on two counts of grand theft[1] (Pen. Code, § 487, subd. 1), petitioner was placed on interim suspension from the practice of law by this court in December 1971, and the matter

---

[1]After pleading nolo contendere, petitioner received probation for three years, with conditions including a 90-day jail sentence (credited to 90 days spent in a diagnostic facility), restitution of $25,000, and payment of a $5,000 fine.

was referred to the State Bar for hearings and recommendation. The local committee, and later the disciplinary board, found substantially the same facts surrounding petitioner's offense although the board adopted new findings.

Petitioner was admitted to practice in 1954 and has no prior disciplinary record. In May 1968 he assumed the management and presidency of two Los Angeles collection agencies. At the time he undertook control, the agencies possessed trust fund shortages of approximately $17,000, and within the next two months the shortages increased to almost $60,000, as revealed by an audit of the State Collection Agency Licensing Bureau (hereinafter "bureau").[2] Following the audit, petitioner was informed the trust accounts would have to be reimbursed and that the agencies' bankruptcy proceedings would not discharge his liability for the deficiencies. Subsequently, by borrowing $120,000,[3] petitioner cured the account shortages, and as of November 1968 the books appeared to be in balance.

However, in March 1969 a bureau auditor found the agencies' bookkeeping systems in disorder and the trust accounts showing deficits of nearly $50,000. The bureau revoked the agencies' licenses and requested a court-appointed receiver, who succeeded in remunerating trust creditors.[4]

In November 1968 petitioner passed a bureau examination, entitling him to a certificate as a qualified manager and making him responsible to the bureau for operation of the agencies. (See Bus. & Prof. Code, § 6921.) Petitioner's conviction was based on shortages occurring after he obtained this certification.

Prior to disposition on the criminal charges, petitioner provided the trial court with numerous letters attesting his good character and positing assurances from many members of the community that misconduct on his part was singular and nonrecurrent and also indicating continued confidence in petitioner's ability to conduct his affairs responsibly.

[2] Trust accounts contain payments collected by the agencies on bad-debt accounts assigned to them by customer-creditors. The agencies are not permitted to mingle these payments with their own general accounts, and within 60 days the customer-creditor must be paid his share. If the trust accounts do not contain sufficient funds to pay creditors' shares, the agency is deemed "out of trust."

[3] The loan was received from a friend and former client who initially refused to invest in the companies but changed his mind after realizing petitioner's plight and learning from the bureau that the agencies might become profitable. Following petitioner's indictment, the lender obtained a civil judgment of $75,000 against petitioner personally and a judgment of $120,000 plus interest against the agencies. Both judgments remain unsatisfied.

[4] Full restitution was made possible by petitioner's making court-ordered payment of $25,000.

In August 1973, more than 19 months after petitioner's case was referred to the State Bar, the local committee recommended petitioner's immediate reinstatement. In November 1973, however, the disciplinary board determined petitioner should be suspended for five years,[5] commencing with the effective date of the order of interim suspension in December 1971. The board also resolved petitioner should comply with paragraphs (a) and (c) of rule 955 of the California Rules of Court.

Petitioner claims certain findings are unsupported by the evidence; namely, that he acted as counsel for owners of the collection agencies prior to his assumption of control, that he would face civil and criminal charges in the summer of 1968, and that he converted trust funds for his own use and benefit.

Petitioner's contentions on unsubstantiated findings are largely without merit since the grand theft conviction shows he used at least some portion of the trust funds for his own benefit, and it is clear he faced potential liability despite lack of specific charges against him during the summer of 1968. However, the finding petitioner acted as counsel for the owners of the agencies, possibly bearing on the extent of his familiarity with the businesses, does not appear correct in one detail. Petitioner acted as counsel for a Mr. McLin, who became involved in the operation of the agencies in 1967, subsequent to becoming a client of petitioner; but the evidence does not indicate petitioner acted as attorney for any other owners of the collection agencies. The partial failure of this finding, however, is not significant.

Petitioner also contends the board's recommended discipline is excessive and unduly harsh in view of his excellent reputation, his lack of prior disciplinary record, his making of restitution, and his inexperience in directing collection agencies.

In determining the appropriate discipline, this court independently appraises the evidence and makes its own evaluation. (*Zitny* v. *State Bar* (1966) 64 Cal.2d 787 [51 Cal.Rptr. 825, 415 P.2d 521].) In doing so, we consider the board's findings and recommendation, recognizing that the findings, though not binding on us, are entitled to great weight. (*Bushman* v. *State Bar* (1974) 11 Cal.3d 558, 563 [113 Cal.Rptr. 904, 522 P.2d 312].)

We may also consider the absence of a prior disciplinary record and evidence of confidence placed in petitioner by other members of the

---

[5] Three members disagreed, finding the discipline insufficient, and one member opposed the recommendation as imposing excessive discipline.

legal profession (*Demain* v. *State Bar* (1970) 3 Cal.3d 381 [90 Cal.Rptr. 420, 475 P.2d 652]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337]), but these considerations must be evaluated in the context of the particular case. **(1b)** In this case we note petitioner has made no attempt to satisfy the civil judgments against him, and his restitution, being required by the terms of probation, cannot be construed as necessarily reflecting an attitude toward rehabilitation. (*In re Wright* (1973) 10 Cal.3d 374 [110 Cal.Rptr. 348, 515 P.2d 292]; *Cutler* v. *State Bar* (1969) 71 Cal.2d 241 [78 Cal.Rptr. 172, 455 P.2d 108].) Moreover, petitioner's claimed inexperience in handling collection agencies does not alleviate the impact of his wrongdoing since he should have recognized his lack of competence.

After careful review, we conclude the record warrants the discipline recommended, though we cannot condone the State Bar's delay in the proceedings of this case since delay itself constitutes punishment in some circumstances. (*Vaughn* v. *State Bar* (1973) 9 Cal.3d 698, 702-703 [108 Cal.Rptr. 806, 511 P.2d 1158].)

Therefore, it is ordered that petitioner be suspended from the practice of law for five years, commencing with the effective date of interim suspension filed in this case in December 1971. It is further ordered that petitioner comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.