[L.A. No. 30419. In Bank. Dec. 1, 1975.]

PAUL GOODSELL SULLINS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Paul Goodsell Sullins, in pro. per., for Petitioner.

Herbert M. Rosenthal and Arthur L. Margolis for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be publicly reproved. Petitioner presently is 69 years old, was admitted to practice in California in April 1953, and has no prior record of discipline in California or in Illinois, where he practiced law from 1930 to 1953.

The disciplinary board's recommendation is based on findings by a local administrative committee of the State Bar that petitioner deliber-

ately misled the Los Angeles County Superior Court by concealing the existence of a letter pertinent to a request by petitioner before the court. In the language of the disciplinary board's findings: "In failing to disclose to the Court the existence or content of the Fick letter, Respondent intended to and willfylly [sic] did in fact mislead the Court in connection with the Court's determination of Respondent's petition for approval of a fifty percent contingency fee with reference to Civil Action No. NEC 2141. In concealing these matters from the Court, Respondent withheld from the Court material facts bearing upon issues which were before the Court for decision."

The local administrative committee concluded that "[petitioner] violated his oath and duties as an attorney and counselor at law within the meaning of Section 6103 . . . of the Business and Professions Code[1] . . .; [he] wilfully violated Section 6128 . . . of the Business and Professions Code[2] . . ."; and "[he] committed acts involving moral turpitude and dishonesty within the meaning of Section 6106 . . . of the Business and Professions Code [3] . . . ." The local administrative committee then recommended that petitioner be suspended from the practice of law for a period of 90 days. The disciplinary board resolved merely to publicly reprove the petitioner, however, by a vote of eight to five.[4]

This case springs from a series of actions involving the residence of Mrs. Elizabeth Weber. On March 20, 1957, Mrs. Weber allegedly conveyed her Pasadena home (hereinafter "Brent Avenue Property") to herself and her sole surviving child, Mrs. Gladys Betty Heitz, by a joint tenancy grant deed. The Brent Avenue Property, valued at about $20,000, was Mrs. Weber's only substantial asset.

---

[1]Section 6103 states in part: ". . . any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension." According to Business and Professions Code section 6068: "It is the duty of an attorney: . . . (d) . . . never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

[2]Section 6128 states: "Every attorney is guilty of a misdemeanor who . . .: (a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

[3]According to section 6106: "The commission of any act involving moral turpitude, dishonesty or corruption, . . . constitutes a cause for disbarment or suspension."

[4]The five dissenting board members felt that the degree of discipline imposed by the recommended public reproof was insufficient; two of these dissenters stated that the board should recommend petitioner be suspended from the practice of law for 30 days. The board did not specifically adopt the foregoing conclusions of the local administrative committee.

On May 20, 1963, Mrs. Weber, by then 74 years old and in a hospital recuperating from a stroke, signed a request that Reverend Thomas A. Williams be appointed temporary conservator for her. Mrs. Heitz, who herself desired to act as her mother's conservator, contested the proposed appointment of Williams. On September 6, 1963, the matter of the conservatorship of Elizabeth Weber received a hearing in Los Angeles Superior Court; petitioner Sullins represented Williams. Following the hearing, the superior court appointed Mr. Williams permanent conservator. The court also questioned the effectiveness of the 1957 joint tenancy grant deed, on the grounds that it never had been delivered.[5]

On these grounds Mrs. Weber, through her conservator Williams, on November 5, 1963, filed the civil action No. NEC 2141 (hereinafter referred to as the "civil action") against Mrs. Heitz, seeking to set aside and cancel the purported March 1957 conveyance of the Brent Avenue Property. Petitioner represented the conservator in this civil action, which on December 20, 1963, resulted in a default judgment against Mrs. Heitz. On April 28, 1964, however, through the efforts of Mr. David Daar, her new counsel, Mrs. Heitz succeeded in having this default judgment set aside, and in securing permission to file an answer to the civil action complaint.

Mrs. Weber died on January 8, 1964, leaving a will dated September 19, 1963, drafted by petitioner. The will named Mrs. Weber's nephew Bradford Fick as sole beneficiary of her estate, specifically disinherited Mrs. Weber's daughter, and contained a no contest clause[6] which forms the basis for one of petitioner's contentions. The will was admitted to probate; the court named Williams (whose conservatorship had terminated with Mrs. Weber's death) executor; petitioner continued to represent Williams. The court also substituted Williams as plaintiff in the civil action, in place of the deceased Mrs. Weber. Except for the possibility of obtaining the Brent Avenue property through success of the civil action, the assets of the estate were no more than about $350, less than the unpaid debts (funeral expenses, etc.).

---

[5]The hearing produced testimony that the aforementioned March 20, 1957, joint tenancy grant deed, whose execution was attested to by a notary, had been recorded only on June 17, 1963, at the instigation of Mrs. Heitz who discovered the unrecorded deed among her mother's papers.

[6]The no contest clause disinherited "any devisee, legatee, or any beneficiary under this will . . ., who . . . shall, in any manner whatsoever, directly or indirectly, contest this Will or attack, oppose or in any manner seek to impair or invalidate any provision thereof, or shall settle or compromise directly or indirectly, either in or out of court, with any such contestant, or shall acquiesce in or fail to oppose such proceedings. . . ."

Mrs. Heitz, represented by Daar, contested the will in a petition filed on April 30, 1964, alleging (inter alia) that at the time Mrs. Weber executed the will she had been incompetent and unduly influenced by Williams. Petitioner Sullins represented the estate in this will contest action. In addition, on or about June 4, 1964, pursuant to his duties as attorney for the executor, petitioner wrote to Mrs. Weber's nephew Bradford Fick, then age 56 and living in Chicago, Illinois, informing him of Mrs. Weber's will and the status of the estate.[7]

Mr. Fick replied promptly in a notarized letter dated June 9, 1964, stating that he wished Mrs. Heitz to have all property under Mrs. Weber's will, and that he did not wish Mrs. Heitz to contest the will; the letter also asked petitioner to send Fick for signature any papers needed to carry out Fick's wishes.[8] Petitioner's treatment of this letter from Fick is the main basis of the disciplinary board's findings against petitioner, portions of which findings were quoted above.

In particular, petitioner admits: that he did not reply to this letter of Fick's or otherwise acknowledge its receipt; that he made no effort to inform Mrs. Heitz of its contents; and that he never disclosed the letter's receipt or contents to the superior court, which in June 1964 had before it the civil action to set aside the 1957 conveyance, the probate of the Weber estate, and Mrs. Heitz's contest of her mother's will. On September 18, 1967, moreover, still without disclosing Fick's letter, petitioner sought and secured from the court approval of a 50 percent contingency fee agreement for petitioner's legal services pending in the civil action, explaining that a prior court-approved $33\frac{1}{3}$ percent

---

[7]Petitioner's letter to Fick read:

"Dear Sir:

"You may, or may not, be aware that you were named by your aunt, Elizabeth Weber, as the sole devisee under her will, which is now being probated here. The principal asset in her estate is the residence at 825 Brent Avenue, South Pasadena, California.

"Contested litigation, however, is now going on between Mrs. Weber's daughter, Gladys Betty Heitz, and Thomas A. Williams, the Executor of Mrs. Weber's will. If Mrs. Heitz should be successful in this litigation, Mrs. Weber's estate would cease to hold said property as an asset, and you would receive nothing as devisee.

"I represent the Executor. If you should desire any further information relating to the matter, kindly let me hear from you."

[8]The text of Fick's letter is as follows: "In answer to your letter dated June 4, 1964 that I am the sole devisee under the will left by my Aunt, Elizabeth Weber, and now in probate court, I wish to state that I do not wish my cousin, Gladys Betty Heitz, to contest this will, as I believe that any and all property left under this will is rightfully belonging to her, and if there are any papers to sign please forward them to me, and I will sign them over to her."

contingency fee agreement was inadequate because the civil action had been and would continue to be fiercely contested.[9]

Shortly before the civil action was scheduled for trial, Fick came to Los Angeles at Daar's request[10] and testified at two depositions, in August and September 1968. His testimony revealed his 1964 exchange of correspondence with petitioner, affirmed that before Daar contacted him in 1968 Fick had never communicated with Mrs. Heitz or Mr. Daar concerning matters connected with Mrs. Weber's will, and reaffirmed Fick's intention to assign his interest in the estate to Mrs. Heitz; indeed Fick executed such an assignment on August 12, 1968.

Alluding to Fick's testimony, Mrs. Heitz petitioned the superior court for removal of the administrator of the estate[11] and his attorney (petitioner Sullins). After a full hearing, the court on April 23, 1969, ordered the requested removal, and directed the public administrator to administer the estate. The court found that the administrator and petitioner Sullins had ". . . committed a fraud upon the Court, and the Estate . . ." when they presented the new agreement for attorney fees to the court without disclosing the existence of the letter or Fick's intention to make Mrs. Heitz the assignee of his interest in the estate. The court also found, "That neither petitioner Gladys Betty Heitz or her attorney

---

[9]Paragraph Five of the petition for a 50 percent contingency fee stated: "Considering all of the pertinent factors—that said Cause No. NE C 2141 was filed nearly four years ago; that the cause of action is a contingent one; that the cause has already been carried to the District Court of Appeal and was remanded by that Court to the trial court for further proceedings: that the case has been and will undoubtedly . . . continue to be fiercely contested at every stage of the cause; that it will be necessary to fight the appeal by the said defendant, GLADYS BETTY HEITZ from the order entered by the Court on the 11th day of August, 1967, substituting petitioner as the plaintiff in said action; that there remains a great deal of discovery work to be done in the case; and that there will in all probability be a very vigorously and bitterly contested trial of the action, and possibly still further appeals to the higher courts—these are some of the factors on which your petitioner bases his opinion that the agreement entered into by and between petitioner as Client and said PAUL GOODSELL SULLINS, as Attorney, is eminently fair to both parties thereto as well as to this estate, its creditors and the beneficiary under the Will of the decedent."

[10]At the hearings conducted by the local administrative committee, Daar testified that he had contacted Fick in the summer of 1968 after Mrs. Heitz had expressed to Daar her surprise that Fick, "who loved her," was attempting to deprive her of the Brent Avenue Property; petitioner Sullins insisted that Daar knew about Fick's letter before Daar contacted Fick, through information somehow obtained in June 1964.

[11]Williams, the original executor of Mrs. Weber's estate died in 1966. Thereafter Richard S. Hubbell was appointed administrator with the will annexed, and was substituted for Williams as plaintiff in the civil action. Petitioner continued to act as attorney for the estate throughout the proceedings.

learned that Bradford Fick had renounced all interest he had in the Estate in favor of Gladys Betty Heitz until during the month of July of 1968." The Court of Appeal affirmed the removal order in an unpublished opinion filed April 23, 1970. Petitioner Sullins did not request a rehearing, nor did he petition for a hearing from us.[12]

The disciplinary board's recommendation rests on the above recital of facts. Petitioner's numerous lengthy contentions in opposition to the recommendation may be consolidated and summarized as follows: (1) The local administrative committee and the disciplinary board permitted procedural irregularities which denied petitioner due process; in particular, the local administrative committee made findings, adopted by the disciplinary board, which involved matters not included in the State Bar's notice to show cause, as amended. (2) Mrs. Heitz's attorney David Daar had himself concealed from the court the existence of Fick's letter, which Daar had acquired shortly after it was written on June 9, 1964. (3) The no contest clause in the will implied that Fick forfeited his interest in the estate when he wrote petitioner offering to sign his interest over to Mrs. Heitz; alternatively, accepting his inheritance under the will estopped Fick from assigning his interest to Mrs. Heitz and thereby defeating Mrs. Weber's express disinheritance of her daughter. (4) Petitioner's duty to the creditors of Mrs. Weber's estate required him to press the civil action to cancel the deed, irrespective of Fick's intention to assign his interest in the estate to Mrs. Heitz; indeed, to avoid prejudicing this duty to the creditors, petitioner had to keep Fick's letter off the court records. These contentions will be examined seriatim.

Our standards of review of State Bar disciplinary recommendations are well established. ■ In determining the appropriate discipline for an attorney's misconduct, this court independently appraises the evidence and makes its own evaluation, recognizing that the disciplinary board's findings and recommendations, though not binding, are entitled to great weight (*In re Ellis* (1974) 12 Cal.3d 442 at p. 445 [115 Cal.Rptr. 795, 525 P.2d 699]); however, the burden is on petitioner to show that the board's recommendation is erroneous or unlawful (*In re Silverton* (1975) 14 Cal.3d 517 at p. 523 [121 Cal.Rptr. 596, 535 P.2d 724]; 7 Cal.Jur.3d Attorneys At Law, § 135, pp. 419-420).

---

[12]Although this Court of Appeal affirmation of petitioner's removal as attorney for the estate did not immediately terminate the bitter litigation between the parties, the ultimate disposition of the Brent Avenue Property now was predictable. On September 14, 1970, the superior court entered summary judgment for Mrs. Heitz in the civil action, finding that Mrs. Weber had, in fact, properly delivered the deed to her daughter; the public administrator represented the plaintiff estate.

■ Petitioner's contentions of procedural irregularities fail to meet this burden. State Bar Rules of Procedure applicable to proceedings before a local administrative committee (rule 29) and before the disciplinary board (rule 75) are identical in substance. Rule 29 provides in relevant part that: "No finding or recommendation of a commitee made in a disciplinary proceeding shall be invalidated . . . for error in pleading, or in procedure, . . . unless upon the whole record . . . the board is of the opinion that error has been committed and has resulted or will result in miscarriage of justice." In *Linnick v. State Bar* (1964) 62 Cal.2d 17 at p. 23 [41 Cal.Rptr. 1, 396 P.2d 33], we interpreted rule 29 to mean that a variance between the board's findings and the notice to show cause would not be regarded as a miscarriage of justice if the petitioner in fact had sufficient notice to eliminate prejudicial surprise in the preparation of his defense.

There are no grounds for belief that the procedures of the local administrative committee and the disciplinary board in any way prejudiced petitioner's defense to the charges against him. The hearings of the local administrative committee and the disciplinary board extended from July 12, 1972, to October 10, 1974; during these hearings petitioner was given full opportunity to argue his case and to make his very voluminous exhibits part of the record. All issues involved in the disciplinary board's findings were thoroughly argued in these hearings, as well as in various memoranda and briefs submitted by petitioner himself *prior to* the local administrative committee's report of its findings on May 20, 1974. The notice to show cause was twice amended at the urging of petitioner, in conformity with State Bar Rules of Procedure, rule 30. The violations of Business and Professions Code sections 6103, 6106 and 6128, asserted in the conclusions of the local administrative committee, were charged in the notice to show cause. In its original as well as its amended versions, the notice to show cause unmistakably charged that petitioner had concealed the existence of Fick's letter from the superior court; this concealment was a major element in the disciplinary board's findings. We conclude there is no merit to petitioner's first contention that he was denied due process by variances between the notice to show cause and the board's findings.

■ Petitioner's second contention, that Mrs. Heitz's attorney David Daar had himself concealed knowledge of Fick's letter from the court, is irrelevant to the basic issue before this court, namely whether petitioner deserves discipline. ■ As we said in *Demain v. State Bar* (1970) 3 Cal.3d 381 at page 386 [90 Cal.Rptr. 420, 475 P.2d 652], "It has been

uniformly held that the purpose of a disciplinary proceeding is not to punish the attorney but to inquire into the moral fitness of an officer of the court to continue in that capacity, and to afford protection to the public, the courts and the legal profession." ■ Our decision in the present inquiry would not be affected even if it were proved that Daar had concealed knowledge of Fick's letter. On these grounds alone, petitioner's second contention is wholly without merit for the purposes of the instant proceedings. Moreover, in actuality the contention that Daar acquired a copy of Fick's June 9, 1964, letter shortly after it was written is against the weight of the evidence.[13] We therefore reject, as pointless and against the evidence, petitioner's contention that Daar also concealed the existence of Fick's letter.

■ Petitioner's third contention—that Fick's letter violated the no contest clause in the will, or alternatively that Fick was estopped from assigning his interest to Mrs. Heitz—is used by petitioner as an argument against the disciplinary board's finding, quoted earlier, that when he sought the 50 percent contingency fee agreement in September 1967 he withheld the material fact of Fick's letter from the court. Petitioner's argument is that since either of the above alternatives would prevent Fick from assigning the Brent Avenue Property to Mrs. Heitz, the letter actually was not material to issues before the court in September 1967.

We find this argument much more ingenious than convincing. This third contention of petitioner's, concerning which the disciplinary board made no specific finding, will not meet the board's findings and charges that he intentionally deceived the court unless petitioner in September 1967 thought Fick had forfeited his claim to the estate, or believed that Fick was not free to assign his inheritance to Mrs. Heitz. There is no evidence that petitioner so thought or believed in September 1967; there is good evidence to the contrary.[14] Therefore, though we question the

[13]We reach this conclusion without having to give the required great weight to the evidence supporting the findings of the local administrative committee, who were able to observe the demeanor of witnesses (*Sampson* v. *State Bar* (1974) 12 Cal.3d 70 at p. 74 [115 Cal.Rptr. 43, 524 P.2d 139].) Petitioner does not explain away Fick's uncontradicted testimony that he never had mailed a copy of his letter to either Mrs. Heitz or Mr. Daar, and indeed never had heard of Daar before 1968; petitioner does not accuse Fick of untruthfulness or failure of memory. We remarked earlier that the court which in April 1969 ordered petitioner's removal as attorney for the estate agreed that Mrs. Heitz and Daar had not learned of Fick's letter until 1968; petitioner's arguments in this regard were aired before that court.

[14]At no time did petitioner notify Fick that Fick's June 1964 letter risked forfeiture of his inheritance, or that Fick's intended assignment to Mrs. Heitz of his interest might be barred by the will. In May 1967, when appointment of Hubbell as administrator with the

claims that Fick's letter (see fn. 8, *ante,* p. 615) violated the no contest clause (see fn. 6, *ante,* p. 614), or that the will estopped Fick's assignment of his interest to Mrs. Heitz, we need not rule on the legitimacy of these claims. We conclude that petitioner's third contention, embodying these claims, is no defense to the disciplinary board's findings and charges against him.

■ Petitioner's fourth and last contention, that his duty to the estate's creditors required him to withhold Fick's letter from the court, is offered as a defense to the local administrative committee's finding that petitioner ". . . intended to and did in fact mislead the Court." The local administrative committee rejected this defense after full discussion, and incorporated into its findings the language that petitioner ". . . had committed a fraud upon the Court," used by the court which ordered petitioner's removal as attorney for the estate.

The disciplinary board accepted this language, and also accepted the language of the Court of Appeal which in April 1970 affirmed the removal order: "The issue before the court on the petition for removal was not one of reweighing the issue of employment of counsel to recover the property; it was whether material facts bearing on the proposed contingent fee contract had been withheld from the court." Although the board did not specifically adopt the local administrative committee's conclusions, petitioner as an attorney is bound by the Business and Professions Code. Business and Professions Code sections 6068, subdivision (d) and 6128, subdivision (a) *unqualifiedly* require an attorney to

---

will annexed was first requested (see fn. 11, *ante,* p. 616), petitioner Sullins certified that he served "Notice of Hearing upon BRADFORD FICK, the legatee and devisee named in the decedent's will"; no notices were served on other potential devisees, though such service would be expected if petitioner believed Fick had forfeited his inheritance. Petitioner referred to this "NOTICE upon BRADFORD FICK" in his May 1, 1972 answer to the State Bar's original notice to show cause, saying: "It is thus seen that the fact that I heard nothing whatsoever from Fick in response to my notice to him of May 8, 1967, and his subsequent letter of December 9, 1967, show[s] that he had long since abandoned any supposed idea of conveying his interest to Gladys Betty Heitz, if he ever had any such intention, which I deny, and was content that the action against her be continued unabated." In this same answer petitioner also stated, "I deny that Fick's letter of June 9, 1964, represented his intention to relinquish his interest in the estate to Gladys Betty Heitz." The theory that Fick was estopped from assigning his interest to Mrs. Heitz was not advanced by petitioner in any of his many prolix written memoranda and statement to the disciplinary board. A related theory, that Mrs. Heitz was estopped from becoming an assignee of Fick was first advanced by petitioner on September 12, 1974, in his supplemental statement in opposition to the report of the local administrative committee.

refrain from acts which mislead or deceive the court (see fns. 1 and 2, *ante,* p. 613); petitioner admits he did not disclose the letter's receipt or its contents to the court. We conclude that petitioner's fourth contention concerning his duty to the estate's creditors is no defense to the charge that he intentionally deceived the court.

In summary, petitioner's contentions, taken as a whole, fail to meet his burden (*In re Silverton* (1975) 14 Cal.3d 517, at p. 523 [121 Cal.Rptr. 596, 535 P.2d 724]) of showing that the board's recommendation is erroneous or unlawful. ■ We still must make our independent evaluation of the appropriateness of the board's recommended discipline however; petitioner's only request concerning the degree of discipline is that the charges against him be entirely dismissed. The main finding against petitioner is that he intentionally misled the court. The amended notice to show cause and the board's findings imply petitioner misled the court for his own gain, an implication accepted by the State Bar;[15] petitioner's fourth contention claims the deception stemmed from his conceived duty to the estate's creditors.

■ The rule is: "Charges of unprofessional conduct on the part of an attorney should be sustained by convincing proof and to a reasonable certainty, and reasonable doubts must be resolved in the attorney's favor" (*Bluestein* v. *State Bar* (1974) 13 Cal.3d 162 at p. 168 [118 Cal.Rptr. 175, 529 P.2d 599]).

---

[15]Paragraph Five of the amended notice to show cause states: "Notwithstanding Mr. Fick's stated intention to relinquish his total interest, as sole beneficiary, in said estate to said Gladys Betty Heitz, you counseled and encouraged the continuance of said civil lawsuit against Gladys Betty Heitz because of your contingent fee interest therein." Paragraph Fifteen of the board's findings states: "On April 23, 1969, the Court . . . granting the petition for removal . . . found, inter alia, that Respondent had committed a fraud upon the Court in his failure to disclose the existence or content of the Bradford Fick letter to the Court and in the mismanagement of the Estate." The phrase "mismanagement of the Estate" is a reference to Daar's trial brief in this removal action, which argued that whereas the litigation to cancel the deed was needed to pay at most $2,000 in claims against the estate, successful cancellation of the deed would leave the estate and ultimately Mrs. Heitz (through Fick's assignment to her of his interest) with no more than half of the $20,000 value of the Brent Avenue Property, because half would go to petitioner Sullins as his fee. "This," said Daar's brief, "is mismanagement, constructive fraud, waste of property of the Estate in maintaining such action, and wholly inequitable." The State Bar's brief in the instant case, citing the fact that the civil action eventually resulted in summary judgment for Mrs. Heitz, asserts: "The evidence irresistably establishes that Petitioner deceived the court, and that he did so with a view to his own financial gain."

We need not pass upon the issue of whether the petitioner misled the court "for his own gain,"[16] because we have concluded that petitioner's conduct in misleading the court, in itself, called for discipline. Although in analogous cases the discipline imposed has been more severe,[17] the disciplinary board, in recommending public reproval, undoubtedly took into account the petitioner's age, his previous 45-year unblemished record as an attorney, and has had the advantage of personal observation of petitioner.

Under these circumstances we are satisfied that a public reproval constitutes an appropriate discipline. It is therefore ordered that Paul Goodsell Sullins be publicly reproved by publication of this opinion.

Petitioner's application for a rehearing was denied December 30, 1975.

---

[16]The court which appointed a conservator for Mrs. Weber in September 1963 questioned the effectiveness of Mrs. Heitz's deed and recommended the civil action against her. (See fn. 5, *ante*, p. 614.) The Court of Appeal which in April 1970 affirmed the removal order wrote: "Mr. Fick's letter did not absolve appellant Hubbell of the statutory duty to take possession of all of the decedent's estate and collect all debts due her (Prob. Code, § 571) in order that the expenses of administration and debts of the estate could be paid (Prob. Code, §§ 951 and 952). While Mr. Fick could assign his interest in the estate, he could not free it from the process of administration. The mere fact that he no longer claimed an interest in debts owing to the estate did not free its representative from the duty to collect them. If Gladys Heitz held property belonging to the estate, it was appellant Hubbell's duty to gain possession thereof and only redistribute it to her in due course of administration, after all disbursements from the estate had been made in compliance with the law. The existence of the letter from Mr. Fick was therefore of no relevance to the determination of whether recovery of the asset was in the best interests of the estate. The failure to disclose it, however, constituted fraud under Probate Code section 521." Moreover, Daar's brief (see fn. 15, *ante*, p. 621) did not point out that the fee Daar had arranged with Mrs. Heitz in April 1964, before petitioner Sullins received Fick's letter, was an unqualified half share in Mrs. Heitz's interest in the Brent Avenue Property; thus, despite the eventual dismissal of the civil action, Mrs. Heitz ultimately retained only half the value of the property.

[17]There are few not outdated cases solely involving intentional deception of the court by an attorney not for his own gain, wherein the attorney had no prior record of misconduct. In *McMahon* v. *State Bar* (1952) 39 Cal.2d 367 [246 P.2d 931], petitioner received a 60-day suspension for withholding from the probate court knowledge he had concerning the execution of a will when he presented an allegation of intestacy; petitioner was attempting to advance his client's interests. In *Pickering* v. *State Bar* (1944) 24 Cal.2d 141 [148 P.2d 1], petitioner received a year's suspension for knowingly filing a complaint asserting facts he knew to be untrue, although apparently without motive of personal gain. In *Paine* v. *State Bar* (1939) 14 Cal.2d 150 [93 P.2d 103], petitioner was suspended for six months for misleading the court by filing a false document in a probate proceeding, without any finding of intent to personally profit thereby.