[L.A. No. 30359. In Bank. June 3, 1975.]

In re RONALD R. SILVERTON on Disbarment.

[L.A. No. 30370. In Bank. June 3, 1975.]

RONALD R. SILVERTON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Ronald R. Silverton, in pro. per., for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review recommendations of the Disciplinary Board of the State Bar (Board) in L.A. No. 30359 that petitioner be disbarred and in L.A. No. 30370 that he be suspended from the practice of law for six months.

In April 1972 petitioner was convicted of one count of conspiracy to obtain money by false pretenses and to present a fraudulent insurance claim and one count of soliciting another to commit or join in the commission of grand theft. His conviction was affirmed by the Court of Appeal in an unpublished opinion; and thereafter, on November 9, 1972, upon a finding that the crimes involved moral turpitude, this court suspended him from the practice of law.

The local administrative committee, after a hearing, recommended that petitioner be suspended from the practice of law for five years, retroactive to December 10, 1972, and that two years of the suspension be stayed upon compliance with stated conditions. The Board, however, upon an independent review of the evidence, recommended, by a vote of eleven to one, with one abstention, that petitioner be disbarred.

The felony complaint charging petitioner with the crimes of which he was convicted was filed in the latter part of January 1972. Three codefendants were charged with petitioner. The codefendants were a chiropractor (Dr. Stavish), a nonlawyer employee of petitioner's law corporation (Ralph Johnson), and a part-time "investigator" for petitioner's law corporation (Betty Rose). All defendants except Johnson were held to answer. Subsequently, the cause against petitioner was submitted on the transcript of the preliminary hearing by a stipulation designated an "anti-Mosely" stipulation so that it would not be regarded equivalent to a guilty plea. (See *In re Mosely,* 1 Cal.3d 913, 924, fn. 9 [83 Cal.Rptr. 809, 464 P.2d 473], cert. den. 400 U.S. 905 [27 L.Ed.2d 142, 91 S.Ct. 144].) Petitioner was found guilty of the two offenses hereinabove referred to. In addition to his unsuccessful appeal, petitioner attacked his conviction without success by collateral proceedings in the federal court.

The record of petitioner's conviction is conclusive evidence of his guilt. (Bus. & Prof. Code, § 6101.) However, although it was therefore unnecessary that proof be presented in these proceedings that he committed the crimes, the facts and circumstances relating thereto are relevant in determining the appropriate discipline. (See Bus. & Prof.

Code, § 6102; *In re Bogart,* 9 Cal.3d 743, 748 (2) [108 Cal.Rptr. 815, 511 P.2d 1167].) Under the circumstances, evidence thereof was properly received.

Such evidence shows that on December 24, 1971, Laurence A. Rooker, an investigator in the office of the District Attorney of Los Angeles County, was in an automobile accident, in which his Toyota was rear-ended by a Cadillac. There was substantial damage to Rooker's automobile ($366.60), and he received a settlement from his insurance company for the amount thereof less a $100 deductible. Rooker testified that he suffered no personal injuries.

On January 4, 1972, Rooker received a telephone call from a woman who identified herself as Mrs. Rose and asked if she could come to his home to discuss his insurance claim. In the course of the conversation, Rooker informed Mrs. Rose that he had not been injured, but she told him that, in any event, she felt that the attorney for whom she worked could assist him in recovering several thousand dollars. When Rooker asked the name of the attorney, she gave him petitioner's name. He asked how she had obtained his telephone number, which was an unlisted one; and she informed him that she had "snuck a copy of the report" from the police department. The fact that Rooker worked in the district attorney's office did not appear on the report.

In accordance with their agreement, Mrs. Rose came to Rooker's home the next evening. Mrs. Rose gave Rooker several of petitioner's business cards and on the back of one of them wrote the name and address of Dr. Stavish and her own name and telephone number. She also had Rooker sign a retainer agreement between petitioner's law corporation and himself. She signed it on behalf of petitioner's law corporation.

Rooker testified that he again informed Mrs. Rose that he had not been injured and that she then explained to him the symptoms of a whiplash injury and told him that if he said he had pain in his neck, no one could dispute it. She added that the law firm had a doctor (Dr. Stavish) who regularly handled such matters and could prepare a report no one would question. Mrs. Rose urged Rooker to see Dr. Stavish and explained that the amount of his recovery would be determined to a large extent by the amount of the medical fees incurred.

The next day, Rooker, wired with a tape recorder, went to petitioner's office. He briefly saw petitioner, who took him to the office of one of his

administrative employees, Ralph Johnson. Rooker told Johnson that he had not been injured, and Johnson expressed surprise that Mrs. Rose had sent him to the office. When Rooker asked if it were true, as Mrs. Rose had informed him, that if he said he had a whiplash injury, no one could dispute it, Johnson said that that was true; and he pointed out various parts of the neck and back where pain would be felt in a whiplash. Although Rooker said that he had not been injured and had no pain, Johnson telephoned Dr. Stavish's office and made an appointment for Rooker to see the doctor that day. He suggested that Rooker tell the doctor he wanted his back checked.

Since Johnson had informed Rooker that he was not an attorney, Rooker said he would like to see petitioner again. Johnson then took him to petitioner's office. Rooker told petitioner that he had not been injured, and petitioner replied that if Rooker had not been injured, he did not want his case. He went on to say, however, that sometimes people receive injuries and do not become aware of them until later and that Rooker should have a doctor examine him. Rooker said that he would not know where to tell the doctor he felt pain. Petitioner said that Rooker should not worry about that, as Johnson would call the doctor and take care of it.

When Rooker saw Dr. Stavish, the latter filled out a form in Rooker's presence. In accordance with Rooker's answers to the questions put to him, Dr. Stavish wrote, "No," to each question (questions relating to headaches, pain, dizziness, nausea, etc.). Rooker asked if the physician-patient privilege would prevent the doctor's repeating anything Rooker told him, and Dr. Stavish assured him that such was the case. Rooker then told Dr. Stavish about his discussions hereinabove mentioned regarding whiplash injury, and Dr. Stavish told him that it was his practice to believe whatever any patient told him, since the injury could not be disproved. He then asked the same questions he had asked while previously filling out the form, but Rooker could see that this time he answered some of the questions, "Yes," and others, "Some," leaving, "No," on the remainder.

Rooker was scheduled to come in for therapy treatments, and he saw Dr. Stavish on several other occasions, but he was given no treatment. The last time he saw Dr. Stavish, his blood pressure was taken. When he came for his next appointment (January 24, 1972), the office was closed.

Search warrants were then obtained, and Rooker's files were recovered from Dr. Stavish's office and from petitioner's office. Thereafter, as hereinabove mentioned, a felony complaint was filed against petitioner, Dr. Stavish, Mrs. Rose, and Mr. Johnson. No claim for alleged personal injuries of Rooker was ever presented to an insurance company.

At the hearing before the local administrative committee, the chairman properly ruled that evidence with respect to the facts and circumstances of the crimes of which petitioner had been convicted would not be received for the purpose of collaterally attacking the conviction, but would be considered only to the extent it was relevant to appropriate discipline of petitioner. The purpose of the evidence presented by petitioner, however, was clearly to show the absence of criminal actions except for the independent acts of illegal solicitation of law business by Mrs. Rose.

In attempting to show mitigating circumstances, petitioner presented evidence that in March 1972 he had been convicted of other crimes and had been suspended on the ground that the crimes involved moral turpitude; that after he served a sentence in prison for the crimes, his conviction was reversed on appeal; that he was later retried and acquitted; and that as a result of the foregoing he had been financially ruined and lost his law practice and his extensive real estate holdings. He also said that while he was confined, he assisted, without fee, about 22 persons to obtain their freedom by writ. In addition, he testified that he was married, had five children, and supported his wife, his ex-wife, and the children.

Petitioner stated that he could not offer evidence of remorse, as there was no moral turpitude, and he believed that his conviction was erroneous. He said that prior to the Rooker matter he had announced that he would be a candidate for the office of District Attorney of Los Angeles County and that it was his belief that Rooker was trying to "get something on him" regardless of the facts. He admitted that Mrs. Rose's actions were improper and said that if he had it to do over again, he would have a different structure in his office operations, but that he did not feel any moral culpability. He further testified that he had been a member of the Crime Commission of Los Angeles County, had received a commendation from the state Legislature, and felt that his reputation in the field of personal injury was good. Since his suspension went into effect, petitioner (who, in addition to being an attorney, is a certified public accountant) has been doing accounting work.

As has been pointed out by this court on innumerable occasions (see, e.g., *In re Bogart, supra,* 9 Cal.3d 743, 748 (1); *In re Plotner,* 5 Cal.3d 714, 716 (1) [97 Cal.Rptr. 193, 488 P.2d 385]), the burden is on petitioner to show that the board's recommendation is erroneous or unlawful; and he has failed to meet this burden.

The crimes of which petitioner was convicted are serious crimes involving moral turpitude (see *In re Hallinan,* 43 Cal.2d 243, 247-248 [3, 4] [272 P.2d 768]); and disbarments, rather than suspension, have been the rule, rather than the exception, in such cases (*In re Bogart, supra,* 9 Cal.3d 743, 748 (3)).

Although in the present matter petitioner has sought to show mitigating circumstances, he has not succeeded in doing so. Moreover, it is significant that petitioner has failed to show any remorse and has devoted his efforts chiefly to an attempt to show that there was a complete lack of evidence in the trial court pointing to his guilt of the crimes of which he was convicted.

As hereinabove noted, the recommendation of the local administrative committee was suspension for a substantial period of time, while the Board has recommended disbarment. As explained in *Toll* v. *State Bar,* 12 Cal.3d 824, 831 (2) [117 Cal.Rptr. 427, 528 P.2d 35], this court has the final word on what discipline should be imposed, but "[a]lthough the committee's as opposed to the Board's *factual findings* are entitled to the greater weight, it is the Board's recommendation in matters of the *discipline* to be imposed which is to be accorded the greater weight." Under the facts of this matter, we have concluded that the Board's recommendation of disbarment should be followed.

It is therefore ordered in L.A. No. 30359 that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. The proceeding in L.A. 30370 is dismissed without prejudice to further proceedings should petitioner hereafter seek reinstatement. It is also ordered that petitioner comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied July 3, 1975.