644 F.2d 1341
 Ronald R. SILVERTON, Plaintiff-Appellant,
v.
DEPARTMENT OF the TREASURY OF the UNITED STATES OF AMERICA,
Office of the Director of Practice, Leslie S. Shapiro,
Director of Practice, John J. Corcoran, County Clerk and
Clerk of the Superior Court of California, County of Los
Angeles, the State Bar of California, the California State
Board of Accountancy, Defendants-Appellees.
 No. 78-2964.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 2, 1980.
Decided May 11, 1981.
 
 1
 Ronald R. Silverton, Los Angeles, Cal., for plaintiff-appellant.
 
 
 2
 Lawrence Gotlieb, Robert M. Sweet, Alan A. Mangels, Los Angeles, Cal., argued, Dzintra I. Janavs, Los Angeles, Cal., on brief, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before HUG and FERGUSON, Circuit Judges, and EAST,* District Judge.
 
 AMENDED OPINION
 EAST, District Judge:
 
 5
 Silverton appeals from the judgment entered by the District Court on May 9, 1978, 449 F.Supp. 1004 (C.D.Cal.1978), dismissing with prejudice Silverton's First Amended Complaint and Civil Rights Action (42 U.S.C. §§ 1981 and 1983) as to each of the defendants-appellees Department of the Treasury of the United States of America, Office of the Director of Practice, and Leslie S. Shapiro, Director of Practice (Treasury); John J. Corcoran, County Clerk and Clerk of the Superior Court of California, County of Los Angeles, (Clerk); The State Bar of California (Bar); and The California State Board of Accountancy (Board).
 
 
 6
 We note jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 SILVERTON'S STATE CONVICTIONS:
 
 7
 In April, 1972, Silverton was convicted of one count of conspiracy to defraud an insurance company and one count of solicitation of grand theft in a California Superior Court. The convictions were affirmed by the California Court of Appeal on October 31, 1972. The California Supreme Court denied Silverton's petition for review on December 9, 1972, and the United States Supreme Court dismissed Silverton's appeal for want of a substantial federal question. 412 U.S. 901, 93 S.Ct. 2292, 36 L.Ed.2d 967 (1973).
 
 SILVERTON'S DISBARMENTS AND REVOCATION:
 
 8
 Following the finality of Silverton's felony convictions, he was, upon findings and recommendations of the Bar, disbarred by the California Supreme Court from the practice of law in California. Silverton v. State Bar, 14 Cal.3d 517, 121 Cal.Rptr. 596, 535 P.2d 724, 121 Cal.Rptr. 596 (1975), and his certified public accountant certificate was revoked by the Board. Also an administrative law judge, after a hearing, suspended Silverton from practice for three months before the Internal Revenue Service pursuant to 31 C.F.R. §§ 10, et seq. The General Counsel of Treasury, acting for the Secretary of the Treasury, after a full review of the record, modified the three-month suspension to complete disbarment.
 
 PRIOR STATE AND FEDERAL HABEAS PROCEEDINGS:
 
 9
 During September, 1973, Silverton filed a Petition for a Writ of Habeas Corpus in the California Superior Court (State Habeas 1). An evidentiary hearing was held and the petition was denied. The California Court of Appeal affirmed.
 
 
 10
 On March 8, 1974, Silverton filed a habeas petition in the California Court of Appeal (State Habeas 2). That court denied the petition on April 3, 1974. A petition for rehearing was denied by the California Supreme Court on May 1, 1974.
 
 
 11
 On June 12, 1974, Silverton petitioned the United States District Court, Central District of California, for habeas relief. That District Court on March 3, 1975 denied the petition without an evidentiary hearing on the several grounds of a failure to state facts sufficient to grant relief, lack of subject matter jurisdiction, and that Silverton's federal habeas claims were barred under the doctrine of res judicata and/or collateral estoppel. Subsequently, the District Court denied reconsideration and refused to issue a certificate of probable cause for appeal. This court declined to issue a certificate of probable cause on the grounds that Silverton's attempted appeal was "legally frivolous" (C.A. 75-8390). The Supreme Court of the United States denied Silverton's petition for certiorari, Silverton v. California Adult Authority, 425 U.S. 912, 96 S.Ct. 1509, 46 L.Ed.2d 762 (1976).
 
 
 12
 SILVERTON'S CLAIMS IN EACH OF THE HABEAS PROCEEDINGS:
 
 
 13
 In each of the two state and the one federal habeas proceedings, Silverton relied upon these allegations of Fifth and Sixth Amendment infringements:
 
 
 14
 (1) Lack of a Fifth Amendment due process trial because the Superior Judge considered extrajudicial matters and information;
 
 
 15
 (2) Sixth Amendment violation of Silverton's right to a jury trial because he submitted his case to the Superior Court on the record of the preliminary hearing after the Superior Court told his advisory counsel that there was no way Silverton could be convicted on those facts; and
 
 
 16
 (3) Sixth Amendment violation of Silverton's right to confrontation of witnesses for the same reasons of submission.
 
 
 17
 In the California Court of Appeals State Habeas 2 proceedings, as well as in the federal habeas proceedings, Silverton raised five alleged procedural or evidentiary defects.
 
 
 18
 As stated above, each of those alleged principal claims were rejected as meritless in the two state and one federal habeas proceedings, and the five procedural or evidentiary defects were rejected by the California Court of Appeals and the District Court in the federal habeas proceedings as not reaching constitutional proportions.[1]
 
 
 19
 PROCEEDINGS IN THE DISTRICT COURT IN THESE PROCEEDINGS:
 
 
 20
 In his original complaint, Silverton only sought to set aside his disbarment by Treasury under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 and 706, on the grounds that the APA was unconstitutional.
 
 
 21
 On February 18, 1978, Silverton filed a first amended complaint joining as additional defendants the Clerk,[2] the Bar, and the Board. The first amended complaint sought expunction of the records of his two felony convictions, his California disbarment, the disbarment by Treasury, and the revocation by the Board pursuant to the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983.
 
 
 22
 The Bar and the Board each filed a motion for a dismissal of the amended complaint and actions thereunder. The District Court heard the motions, before any appearance was made by the Treasury, and granted the motions.
 
 
 23
 As to the Clerk, Bar, and Board, the District Court held that the complaint failed to state a claim upon which relief can be granted against those defendants because the alleged federal constitutional issues relating to the validity of Silverton's criminal conviction and the subsequent disciplinary proceedings resulting in Silverton's disbarment have been fully and fairly heard and determined against Silverton, and Silverton's action is, therefore, barred by the doctrine of prior adjudication (i. e., collateral estoppel and/or res judicata). As to the Treasury, the District Court, sua sponte, dismissed the action for the reason that Silverton's disbarment was clearly supported by the evidence of record; i. e., Silverton's felony convictions.
 
 
 24
 The District Court further held as to the Bar that it lacked subject matter jurisdiction to review alleged federal constitutional defects in the final order of the Supreme Court of California disbarring Silverton from the practice of law under the "Theard Doctrine," Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). Furthermore, the District Court held that the Bar and Board were not a "person" within the context of § 1983 and Silverton had not alleged that his criminal conviction or the subsequent disciplinary proceedings culminating in his disbarment were the result of racial discrimination within the context of § 1981.
 
 
 25
 The judgment appealed from followed.
 
 ISSUES ON REVIEW:
 
 26
 We are convinced that the following two issues are dispositive of this appeal.[3]
 
 
 27
 (1) Did the District Court err in dismissing the amended complaint and cause with prejudice against Treasury?
 
 
 28
 (2) Did the District Court err in dismissing the amended complaint and cause with prejudice against the Clerk, the Bar, and the Board by the application of the doctrine of res judicata and/or collateral estoppel?
 
 DISCUSSION:
 Issue 1 (Treasury) :
 
 29
 We emphasize that at the time the District Court dismissed the action against Treasury, not then appearing, it had before it two of the state appellees' motions to dismiss, as well as various exhibits filed in support of said motions and Silverton's opposition thereto. The record here reveals that in addition to the various court decisions upholding Silverton's disbarments and convictions, the District Court had before it the transcript of the State Habeas 1 evidentiary hearing, the transcript of the hearing before the California State Bar, and the Clerk's transcript which included a transcript of the preliminary hearing.
 
 
 30
 A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related. Rogers v. Fuller, 410 F.Supp. 187, 192 (M.D.N.C.1976); Walner v. Friedman, 410 F.Supp. 29, 34 (S.D.N.Y.1975); Piemonte v. Chicago Board Options Exchange, Inc., 405 F.Supp. 711, 718 (S.D.N.Y.1975).
 
 
 31
 We are satisfied that Treasury's disbarment of Silverton pursuant to the provisions of 31 C.F.R. Part 10 (Treasury Department Circular 230) was not arbitrary, capricious nor an abuse of discretion, but, on the contrary, the decision was fully supported by substantial relevant evidence.
 
 
 32
 The District Court did not err in sua sponte dismissing the first amended complaint and action, with prejudice, as against Treasury. (See the discussion under Issue 2).
 
 Issue 2 (Clerk, Bar and Board) :
 Res Judicata-Collateral Estoppel :
 
 33
 In order for Silverton to prevail against any of the defendants-appellees, it is necessary for him to void by collateral attack, through the vehicle of these § 1983 proceedings, the two felony convictions in the California state court and the disbarments and revocation flowing therefrom. The Supreme Court's decision in Allen v. McCurry, -- U.S. --, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), is apparently adverse to Silverton's success. However, the difference in the procedural and factual status between Silverton and McCurry requires further comment and clarification rather than a direct application of and reliance upon the ultimate holding in McCurry. The question of what collateral estoppel effect to give to a state habeas proceeding has apparently never been explicitly addressed by this circuit, nor by any other circuit in recent years. The interaction of § 1983, habeas corpus, and the prior litigation doctrine has been an area of divergent paths among the circuits.
 
 
 34
 McCurry, as well as most of the cases in this area, differs from Silverton in that McCurry involved a substantive issue which was decided on the merits at the original trial in question. In contrast, Silverton concerns claims about the conduct of the trial issues which were not raised during the trial or on direct appeal. Thus, the only state court decisions on these claims were reached on state collateral review in State Habeas 1. Whether viewed either as a question of the collateral estoppel effect of a state habeas decision, or of a claim which could have been brought in a post-trial motion or on direct review but was not, the facts of Silverton distinguish it from McCurry for purposes of faithful analysis.[4]
 
 
 35
 This circuit recently expressed a great deal of accommodation for the criminal defendant who seeks to have his or her federal constitutional claims litigated in federal court. Johnson v. Mateer, 625 F.2d 240 (9th Cir. 1980). Although the McCurry decision effectively overruled Johnson on the facts of that case (where a Fourth Amendment claim decided against defendant in a state criminal trial was raised as a basis for a § 1983 claim), the McCurry court twice expressly noted that it was not addressing the question of claims which could have been brought at trial but which were not. McCurry, 101 S.Ct. at 415 nn.5 & 10. The court did find, however, that there is no right to have an unencumbered opportunity to raise a federal claim in federal court. Nonetheless, in deciding that the traditional concepts of collateral estoppel apply to § 1983 actions based on issues decided in a state criminal trial, the court neither approved nor disapproved the circuit court decisions which have held that claims which could have been raised but were not are not precluded in § 1983 actions by collateral estoppel. Id. at 416 n.10. This deliberate action by the Supreme Court to reserve the question now before us here indicates that the courts of appeals are free to reach their own conclusions, guided by the principles of McCurry.
 
 
 36
 However, we are satisfied from the record on appeal and for the reasons later delineated that it is not necessary for this court to meet the dangling question in this case.
 
 
 37
 We look now to the effect of Silverton's State Habeas 1 proceedings upon his § 1983 claims. Silverton's first constitutional infringement claim, that the trial court judge relied on extrajudicial information to convict Silverton and thus denied him a "fair trial" (presumably a procedural due process argument), could not have been raised by post-trial motion or on direct review. It appears that this claim is based upon an affidavit sworn and given to Silverton by the attorney for a co-defendant at the trial over a year after the fact. It states that the judge told this attorney that the judge had received so many calls about bad things Silverton had done, he just had to find him guilty.
 
 
 38
 The due process claim, along with the other two claims, was presented in the State Habeas 1 court which held an evidentiary hearing. This presents the question, which has not been specifically decided by any circuit, viz.: may a § 1983 claim be precluded by a prior adjudication on that claim in a state habeas proceeding?
 
 
 39
 The doctrines of prior adjudication finality are applied to protect adversaries from "the expense and vexation attending multiple lawsuits, (conserve) judicial resources, and (foster) reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153-54, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).
 
 
 40
 The existence of a full and fair hearing on constitutional claims under federal standards is the keystone of the unclimbable wall protecting the finality of a prior state habeas adjudication. In its absence, that wall crumbles. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).
 
 
 41
 As stated, an evidentiary hearing was held upon Silverton's State Habeas 1 petition in a California Superior Court, presenting the same claims as presented to the District Court in the case at bar. There is no reason to conclude that a decision by a state habeas court, after a full and fair hearing, should be considered to have any less weight or credibility than a state court decision in a direct action. If issues are presented to a habeas court, it can be assumed to apply the appropriate constitutional standards and reach a decision just as would be done on direct review. Cf. Stone v. Powell, 428 U.S. 465, 493-94 n.35, 96 S.Ct. 3037, 3051-52, 49 L.Ed.2d 1067 (1976) (confidence in state court judges to correctly decide federal Fourth Amendment issues in direct actions and on direct review).
 
 
 42
 McCurry applied collateral estoppel in a § 1983 action 101 S.Ct. at page 420 in spite of the different contexts in which the claims were presented to the District Court and to the California court, respectively, viz., in the § 1983 action as a basis for damages and in the California court as a basis for suppression of evidence. But see McCurry at 425 (Blackmun, J., dissenting). Here, however, the context of the issues is more similar. In all three habeas proceedings and the § 1983 actions, Silverton basically seeks to have his two convictions invalidated. Although he seeks relief by release from custody in three instances and relief by the expunction of adverse records in the fourth, the posture of the identical constitutional infringement issues in each instance is the same. The mere difference in the form of relief is unimportant. Moreover, the Supreme Court has hinted that the decision of a state habeas proceeding will have collateral estoppel on a subsequent § 1983 action. Justice Brennan pondered the consequences of this situation in his dissent in Preiser v. Rodriguez, 411 U.S. 475, 511, 93 S.Ct. 1827, 1847, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting). The court more explicitly suggested this result a few months later when it stated that when a § 1983 action for damages was brought by a prisoner in federal court, and restoration of good time credits was simultaneously sought in state court (presumably a state habeas action), "(o)ne would anticipate that normal principles of res judicata would apply in such circumstances." Wolff v. McDonnell, 418 U.S. 539, 554 n.12, 94 S.Ct. 2963, 2973 n.12, 41 L.Ed.2d 935 (1974). In sum, we hold that because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards.
 
 
 43
 Under the direction of Townsend, the federal habeas court had to assure itself that the fact-finding proceedings used in State Habeas 1, where the facts relevant to Silverton's three claims were heard and determined, were adequate to afford Silverton a full and fair hearing on the claims and were supported by the record as a whole. If it had doubted the fairness or adequacy of the state hearing, the federal habeas court would have been required to hold an evidentiary hearing on the claims. There appears to be no reason why there should be any material difference between the full and fair hearing standard dictated by Townsend and the standard for a full and fair hearing to enable collateral estoppel to be applied to prior state habeas proceedings. Both are concerned with the ability of the present court to accept the findings of a prior court. Therefore, if a state hearing is a "full and fair hearing" for federal habeas purposes, this is also sufficient to mandate that collateral estoppel be applied.
 
 
 44
 The District Court did not hold an evidentiary hearing after its review of the massive record of the prior state habeas proceedings, particularly the record of State Habeas 1. We think that the District Court is entitled to no less degree of esteem and confidence to correctly follow and ascribe to the mandates of Townsend in deciding Fifth and Sixth Amendment issues as that attributed to state court judges. Stone v. Powell, 428 U.S. at 493-94 n.35, 96 S.Ct. at 3051-52 n.35.
 
 
 45
 We conclude it is manifest from the District Court's dismissal of the first amended complaint and action thereunder on the stated grounds, without an evidentiary hearing, that the District Court was satisfied beyond any doubt that Silverton had received a full and fair hearing in State Habeas 1 on all his constitutional claims and procedural and evidentiary defects.
 
 
 46
 The District Court did not err in dismissing the amended complaint and action thereunder, with prejudice, as to Treasury, Clerk, Bar, and Board.
 
 
 47
 The judgment entered by the District Court on May 9, 1978 is
 
 
 48
 AFFIRMED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 We do not doubt the correctness of the District Court's conclusion in the case at bar that the five defects did not reach constitutional proportions. That conclusion is given strength by the defeat of Silverton's appeal in the federal habeas proceedings as "legally frivolous."
 
 
 [2]
 The Clerk has not filed a brief or participated in the appeal. By letter to this court, the Clerk indicated he has no separate interest in the case, and is prepared to abide by the result of the appeal conducted by the other defendants
 
 
 [3]
 Silverton does not press his claims under 42 U.S.C. § 1981 or his argument that the APA is unconstitutional, both of which he presented before the District Court
 We are not disposed to discuss the various grounds stated by the District Court for the dismissals, other than the adoption of the Bar by prior adjudication. That ground and reason applies with equal force to all defendants-appellees, except Treasury.
 There can be no doubt the District Court was foreclosed from subject matter jurisdiction to grant any relief to Silverton from his California State Bar disbarment under Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). Brown v. Board of Bar Examiners, 623 F.2d 605, 609-10 (9th Cir. 1980), citing McKay v. Nesbitt, 412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). We entertain grave doubts as to the correctness of the District Court's conclusion that the Bar and Board were not a "person" within the context of § 1983. See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is needless to pursue and meet either of those conclusions in this appeal.
 
 
 [4]
 Silverton's first claim could not have been presented on the merits at his criminal trial or in any timely post-trial application because he had not discovered the grounds therefor for more than a year after the trial. We are not convinced by the record on appeal that Silverton could not have presented his second and third claims by any post-trial motion. There is no need to pursue the matter because the three claims were presented and considered in State Habeas 1. Therefore, we limit our review to the procedures utilized in State Habeas 1