[No. S005651. Mar. 30, 1989.]

In re JEROME C. UTZ on Disbarment.

470

472

---

**COUNSEL**

Jerome C. Utz, in pro. per., Sondra Lee Utz and Utz & Utz for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi, Gregory B. Sloan and Marilyn Winch for Respondent.

## OPINION

**THE COURT.\***—We review the unanimous recommendation of the Review Department of the State Bar Court that petitioner, Jerome C. Utz, be disbarred from the practice of law. The recommendation is based on petitioner's conviction of seven counts of mail fraud (18 U.S.C. § 1341) and two counts of using interstate transportation to defraud individuals (18 U.S.C. § 2314).

We placed petitioner on interim suspension, to commence on March 2, 1984, pending the finality of petitioner's conviction. In July 1986, after petitioner's conviction was final, we referred the matter to the State Bar for hearing, report and recommendation of the appropriate discipline.

The hearing panel, composed of a single referee, recommended, pursuant to standard 3.3 of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V), that petitioner be summarily disbarred under Business and Professions Code section 6102, subdivision (c).[1] The referee also determined that if section 6102, subdivision (c) did not apply, he would still recommend disbarment pursuant to standard 3.2 of the Standards for Attorney Sanctions, which calls for disbarment if the crime involves moral turpitude unless the most compelling mitigating circumstances clearly predominate. The review department unanimously adopted these findings and recommendations.

Petitioner contends that many of the findings and conclusions of the State Bar are erroneous. He contests the State Bar's recommendation of disbarment. He alleges this court's decision to place him on interim suspension and the excessive length of the suspension violated his constitutional rights. He also argues that the State Bar violated his Fifth Amendment rights and his right to an impartial hearing. After reviewing the record and petitioner's objections, we conclude that disbarment is the appropriate discipline, but

---

\*Before, Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kaufman, J., and Low (Harry W.), J.†

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

---

†Presiding Justice, Court of Appeal, First Appellate District, Division Five, assigned by the Chairperson of the Judicial Council.

under section 6102, subdivision (d) rather than section 6102, subdivision (c).

## I. FACTS

Petitioner was admitted to the State Bar in 1961, and was a deputy attorney general when the events underlying this matter occurred. In 1978, petitioner left the Attorney General's office and entered private practice until this court suspended him in 1984.

In 1973, the Attorney General's office assigned petitioner, on a part-time basis, to the Monterey Park Task Force (MPTF). The MPTF was a group of federal, state, and local law enforcement authorities charged with the investigation of prison gangs. While petitioner was assigned to the MPTF, United States Marshal Art Van Court introduced him to David Pedley, a federal informant serving time for various fraud-related crimes in Placerville. Petitioner claims that during 1974-1975 Pedley identified various members of prison gangs for him. Petitioner's supervisors did not authorize him to associate with Pedley or any other federal witness.

In 1976, when Pedley was paroled from state custody, federal authorities approved his relocation in Cameron Park, California under the name of "Wellington."[2] Wellington and his son formed two companies, Pacific Park Properties (PPP) and Diamond Pacific Realty (DPR), for the purpose of setting up a land sales operation in Cameron Park. An associate of Wellington, Mike Cano, started Cano Construction Company (CCC). Petitioner became involved in this operation, and essentially was a "silent partner" of the business.[3]

Wellington and his associates solicited investors for their operation. They made several misrepresentations to them. First, they claimed that the lots they were selling were not burdened with any liens or encumbrances even though they knew all of the lots were subject to substantial liens, many of which were the subject of foreclosure proceedings. Second, Wellington and

---

[2] Hereinafter all references to Pedley will be in the name of Wellington. Pedley did not have his name legally changed to Wellington until 1978, but he used the Wellington name after he was paroled.

[3] In its opinion affirming the petitioner's conviction, the United States Court of Appeals made the following comments regarding the petitioner's role in the scheme: "The evidence of Utz's participation was overwhelming. Utz was present at the earliest meetings regarding the formation of the real estate venture. A realtor who dealt with David Wellington considered Utz to be a 'silent partner' in the enterprise. Most of the government's witnesses testified to some type of involvement on Utz's part. In sum, the evidence was sufficient to support the conclusion that Utz was a knowing and active participant in the scheme." (*United States* v. *Wellington* (9th Cir. 1985) 754 F.2d 1457, 1467.)

his associates repeatedly misrepresented their experience in constructing homes. Additionally, PPP, which purportedly owned some of the lots, was eventually found not to have had any interest in them whatsoever. In the meantime, Wellington and his associates diverted funds from the Cameron Park project to unrelated real estate ventures and other private undertakings. They leased several Mercedes automobiles and began to develop a potential television series concerning the federal sensitive witness program. As a result, many investors lost substantial amounts of money. In early 1978, CCC, PPP, and DPR were all forced to declare bankruptcy.[4]

In June 1982, after a lengthy investigation, a federal grand jury indicted petitioner, Michael Cano, David Wellington and his son for aiding and abetting nine counts of mail fraud (18 U.S.C. § 1341) and two counts of interstate transportation to defraud (18 U.S.C. § 2314). Following a four-month jury trial, petitioner was convicted on nine of the eleven counts. He was sentenced to three years' imprisonment concurrently on each count, with imposition of all but six months suspended on condition that he be placed on probation for three years. Petitioner's conviction was affirmed by the Ninth Circuit. (*United States* v. *Wellington, supra,* 754 F.2d 1457, cert. den. 474 U.S. 1032 [88 L.Ed.2d 573, 106 S.Ct 592].)

In addition to the facts underlying the conviction, the State Bar Court made findings of fact with respect to incidents related to the conviction.

1. *Petitioner's Trip to New Jersey*

In November 1977, Wellington was to be sentenced for a mail fraud conviction in New Jersey. Fearful that he might be sentenced to prison, he contacted the United States Attorney in New Jersey handling the matter, and requested that he contact petitioner to verify that he was a "cooperating individual" with the Attorney General's office. Petitioner confirmed that Wellington worked for the California Attorney General's office and any decision to imprison him would hinder an ongoing investigation.

At the New Jersey sentencing hearing, petitioner appeared in chambers of the presiding federal court judge and was introduced as a deputy attorney general from California. The judge considered placing Wellington on formal probation. Petitioner tried to persuade the judge to place Wellington on informal probation in order to protect his identity. Petitioner stated if Wellington's identity was revealed, it would compromise an ongoing investigation. The judge sentenced Wellington to time previously served and informal probation.

---

[4] Wellington and his associates were forced to declare bankruptcy because they encountered difficulties obtaining the necessary financing to continue their land sales operation.

The Attorney General's office did not authorize petitioner to go to New Jersey. He could not validly claim that his visit in November 1977 related in any way to the MPTF because his duties with the MPTF had ended in January 1977. In addition, the Attorney General's office did not have an ongoing investigation which would have been compromised if Wellington had been identified.

### 2. Wellington's Credit Application (Bearup Letter)

In August 1977, Wellington applied for an equipment lease from Donald Smith, the president of Interlease Financial Corporation. Smith advised Wellington that his credit could not be approved if he failed to submit copies of his federal income tax returns. In response to Smith's concern, Wellington provided Smith with a letter from Warren Bearup, Deputy United States Marshal (hereinafter the Bearup letter). The Bearup letter indicated that Wellington's tax returns were confidential and could not be copied for "extreme security reasons."

At petitioner's criminal trial, a government witness testified that the Bearup letter was initially prepared at petitioner's direction for another company nine months earlier. According to the witness, petitioner told him that he waited for United States Marshal Art Van Court to go on vacation. He then went to the United States Marshal's office and dictated the letter to Warren Bearup. Petitioner used his position as a deputy attorney general to gain access to the United States Marshal's office and persuade Bearup to type and sign the letter. The purpose of the letter was to keep Wellington in the land investment scheme. In addition, petitioner used his position as a deputy attorney general to lull Smith into a false sense that Wellington was totally clear of any past criminal misdeeds.

### 3. Legal Name Change in Washington

In February 1978, petitioner accompanied David and his son Mark Wellington to Olympia, Washington. Mark and David had used the Wellington name in lieu of their former name, but the change had never been formalized. Petitioner presented a petition in the judge's chambers requesting the name change. Petitioner informed the judge that David and Mark had been doing undercover work in California, and that they had moved to Olympia.

Petitioner knowingly misrepresented Mark and David's status to the judge. Petitioner knew the Wellingtons had no plans to move to Washington and their undercover work had ended well before they appeared in Washington.

### 4. *Using Position as Deputy Attorney General to Give Credibility to Fradulent Land Sale Scheme*

Petitioner used his position as a deputy attorney general to assure a potential investor that the land sale project was safe. Several investors did not commit to the project until they were aware petitioner worked for the Attorney General's office. He told one potential investor that the Wellingtons were trustworthy and the investment project would be a sound investment. The investor relied on this information, and also informed other prospective investors about the assurances he received from an "Attorney General of the State of California" concerning the land investment project.

## II. PROCEDURAL ISSUES

### A. *Appointment of a Single Referee*

■ Petitioner alleges that he was deprived of an impartial hearing. He contends it is impossible to receive an impartial hearing before the State Bar when the referee works for and is paid by the State Bar. He alleges, without reference to any authority, that this court declared similar procedures formerly used by the Department of Alcoholic Beverage Control unconstitutional. Therefore, he argues that the State Bar's procedures are also unconstitutional.

We have previously determined that the mere fact a person is an employee, member or officer of the State Bar does not establish that he is incapable of sitting fairly in a disciplinary hearing. (*Schullman* v. *State Bar* (1973) 10 Cal.3d 526, 536-537 [111 Cal.Rptr. 161, 516 P.2d 865]; and see *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 301 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310] ["[I]t is clear that the Legislature quite properly considered the fact that a 'self-governing bar' should have the opportunity of policing its own ranks, and bringing disciplinary matters to the attention of the courts . . . ."].) In order to demonstrate that he did not receive an impartial hearing, petitioner must present specific evidence of partiality from his own hearing. Petitioner has failed to do so, and his claim fails. (See *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 131 [207 Cal.Rptr. 302, 688 P.2d 911] [petitioner's claim that the referee should be disqualified was deemed insufficient because it did not show *specific* actions of the referee].)

■ Petitioner requested a three-member panel and questions the constitutionality of the State Bar's decision to appoint a single referee instead of a three-member hearing panel without a hearing and on the basis of the length of the proceedings. Rule 558(d) of the Rules of Procedure of the State Bar authorizes the use of a single referee notwithstanding a request to

be heard by a panel of three referees ". . . if the presiding referee or his designee determines . . . trial is likely to be in excess of one day." (See § 6079, subd. (b). Rule 558(d) implements this section.) The State Bar notified petitioner of its intent to appoint a single referee and gave him an opportunity to file an objection before making its final decision. The presiding referee determined that petitioner's hearing would take at least three days and it did in fact take six days. Petitioner cites no authority to support his claim that this procedure inadequately protected his constitutional rights. We recently held that procedure pursuant to section 6079 does not significantly infringe on an attorney's right to a hearing and that the length of the proceedings is not an unconstitutional basis for assigning a single referee. (*Demergian* v. *State Bar* (1989) 48 Cal.3d 284, 291-293 [256 Cal.Rptr. 392, 768 P.2d 1069].) We conclude that the State Bar Court did not deprive petitioner of any constitutional rights.

### B. *Court's Imposition of Interim Suspension*

■ Petitioner contends that his interim suspension was excessively lengthy and violated his constitutional rights, in that several years transpired between the time he was suspended (March 1984) and the date of his hearing before the State Bar Court (June 1987).

Section 6102, subdivision (a) calls for suspension of an attorney convicted of a crime involving moral turpitude or a felony until the judgment is final and this court issues a new order. Petitioner's conviction did not become final until the United States Supreme Court denied his petition for certiorari in December 1985. In May 1986, this court issued petitioner an order to show cause why discipline should not be imposed. In response to the order, petitioner requested a hearing before the State Bar. In July 1986, we referred the matter to the State Bar and petitioner's case was heard within one year of the referral. This delay was reasonable given the voluminous record in this matter.[5] ■ Even if this court were to consider the delay unreasonable, we have previously determined that delay can be considered a factor in mitigation, but it will not necessarily prevent the imposition of discipline. (See, e.g., *Hawkins* v. *State Bar* (1979) 23 Cal.3d 622, 628 [153 Cal.Rptr. 234, 591 P.2d 524].) In order for delay in initiating the State Bar proceeding to bar the imposition of a sanction, an attorney must show he was prejudiced by the delay. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436,

---

[5] The State Bar had to consider over 4,700 pages of transcript, numerous exhibits, and there were also several prehearing motions. In addition, we have previously ruled that when the length of the interim suspension is due largely to the passage of time before the attorney's conviction becomes final and other procedural matters initiated by the attorney, the delay is not prejudicial to the attorney. (*In re Bogart* (1973) 9 Cal.3d 743, 750 [108 Cal.Rptr. 815, 511 P.2d 1167].)

449 [113 Cal.Rptr. 602, 521 P.2d 858]; *Vaughn* v. *State Bar* (1973) 9 Cal.3d 698, 702 [108 Cal.Rptr. 806, 511 P.2d 1158].) Petitioner has failed to make any showing of prejudice.

## C. *Denial of Fifth Amendment Rights*

Petitioner contends that the State Bar deprived him of his Fifth Amendment privilege against self-incrimination by requiring him to testify at the hearing. Petitioner further asserts that even if he waived the privilege for conduct directly underlying his conviction, he did not waive it for matters unrelated to the offense. He claims the State Bar has waived its right to discipline him by violating his Fifth Amendment rights. (See *Spevack* v. *Klein* (1967) 385 U.S. 511 [17 L.Ed.2d 574, 87 S.Ct. 625] [a lawyer may not be disbarred as a penalty for asserting his privilege against self-incrimination in a State Bar disciplinary proceeding].)

Petitioner's arguments lack merit. ██ An attorney in a State Bar disciplinary matter does not possess the same immunity from being called to testify as a criminal defendant; the attorney "may be called upon to testify but may decline to answer questions on the ground that his testimony would tend to incriminate him." (*Black* v. *State Bar* (1972) 7 Cal.3d 676, 688 [103 Cal.Rptr. 288, 499 P.2d 968].) If the attorney testifies without objection at a State Bar proceeding he has waived the privilege. *(Ibid.)* Petitioner failed to make any such objection regarding any part of his testimony.

## D. *Conviction Based on Altered Indictment*

██ Petitioner contends that his criminal conviction is invalid because the prosecuting attorney altered the indictment without informing the trial court or him, that the altered indictment was never filed in the State Bar proceedings, and that the State Bar impeded his attempts to obtain the only known copy of the altered indictment.[6]

The United States Court of Appeals held the amendment to the indictment insignificant. *(United States* v. *Wellington, supra,* 754 F.2d 1457,

---

[6] Petitioner found a juror from his criminal trial who still had a copy of the alleged altered indictment. Petitioner sought to depose the former juror and obtain a copy of the indictment. The State Bar Court issued a protective order which prohibited petitioner from obtaining a copy of the indictment or deposing the juror for purposes of the State Bar proceedings. In their declarations in support of the protective order, the State Bar examiners noted that petitioner's discovery request was untimely since the formal discovery period had ended and petitioner had not requested an extension. In addition, they noted that any alleged alterations to the indictment were not relevant to State Bar proceedings because petitioner intended to use the altered indictment to collaterally attack his conviction, and this kind of attack is impermissible.

1462.) Although petitioner is appealing the denial of a petition for writ of habeas corpus on this matter, the district court and appellate court have already rejected several of petitioner's prior motions and writs as meritless and frivolous. For purposes of State Bar disciplinary proceedings, the record of conviction is considered conclusive evidence of guilt (§ 6101, subd. (a)), and petitioner may not collaterally attack it. (See *In re Kirschke* (1976) 16 Cal.3d 902, 904 [129 Cal.Rptr. 780, 549 P.2d 548].) The alleged alterations are established as insignificant in these proceedings; therefore, the State Bar Court did not deny petitioner any constitutional rights by preventing his access to the altered indictment.

### III. SUFFICIENCY OF THE FINDINGS

The State Bar Court made findings on the land fraud scheme underlying petitioner's conviction as well as incidents related to the conviction relying on evidence taken at the hearing and transcripts from petitioner's criminal trial. ■ Petitioner challenges the sufficiency of evidence supporting these findings.

■ In determining the sufficiency of the evidence, we conduct an independent review of the evidence. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177].) ■ Petitioner bears the burden of showing that the State Bar's findings are not supported by the evidence. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 549-550 [237 Cal.Rptr. 168, 736 P.2d 754].) ■ Although the State Bar findings are not binding on us, we give them considerable weight. (*Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 677 [244 Cal.Rptr. 462, 749 P.2d 1317].) In particular, "[o]n matters of credibility, we are reluctant to reverse the decision of the hearing panel, which had the opportunity to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony." (*Frazer* v. *State Bar* (1987) 43 Cal.3d 564, 569 [238 Cal.Rptr. 54, 737 P.2d 1338].)

■ The State Bar Court found that most investors lost a substantial amount of money from the land fraud scheme. Petitioner alleges that trial evidence indicates that many investors had recovered part of their money in bankruptcy proceedings and the bankruptcy estate had funds which would eventually cover their remaining losses. The State Bar Court did consider this evidence, but it still found, based on the testimony of several investors at the criminal proceedings, that most investors lost a substantial amount of money. Evidence that some investors recovered a portion of their invest-

ment does not refute the finding that many investors still lost a substantial amount of money.[7]

Petitioner requests that we take judicial notice of new evidence, a 1980 order of dividend payments from the bankruptcy proceedings, which indicates that several investors had claims approved that would eventually compensate them for their losses. ■ We normally do not consider new evidence at this stage of the proceedings, especially when it was available at the time of the State Bar hearings. (See *In re Bloom* (1977) 19 Cal.3d 175, 180 [137 Cal.Rptr. 168, 561 P.2d 258].) ■ Moreover, evidence that eventually investors were made whole does not undercut the finding that petitioner's crime was a serious one because its commission caused substantial losses.

Petitioner next challenges the State Bar Court's finding that "financial reward was clearly a main motive" for his conduct. Petitioner asserts that he suffered significant financial loss by providing assistance to Wellington, a federal protected sensitive witness. This confuses result with motive; the project turned out to be unprofitable, but it was not intended to be so.

Petitioner also contests the State Bar Court's finding that there was no evidence Wellington provided him with information valuable to the Attorney General's office. The record supports the State Bar. Petitioner's supervisors for the MPTF and the Attorney General's office all testified that petitioner never mentioned Wellington and he never informed them of any instance in which Wellington provided information. The State Bar Court found the supervisors' testimony to be credible.[8]

## IV. Appropriateness of Summary Disbarment

■ ■ The State Bar Court first recommended disbarment under section 6102, subdivision (c) which requires summary disbarment under specified circumstances.[9] ■ This court places considerable weight on

---

[7] In ruling on petitioner's writ of habeas corpus involving a related matter from his conviction, the federal district court also determined that evidence from the criminal trial clearly indicated that petitioner defrauded investors of a substantial amount of money. (United States v. Utz, No. CR 82 0629 TEH (N.D. Cal. 1988).)

[8] With respect to petitioner's credibility, the State Bar Court found that he had convenient lapses of memory, especially regarding efforts to cover up his activitites with Wellington. His claim that he received information from Wellington had scant corroboration and further his demeanor while explaining his motives seemed to reflect a practiced script rather than honest recall.

[9] The State Bar Court based its recommendation on standard 3.3 of the State Bar's Standards for Attorney Sanctions, which provides that an attorney must be summarily disbarred irrespective of any mitigating circumstances if convicted of a felony defined by section 6102, subdivision (c). Petitioner argues that the State Bar inappropriately considered the new Stan-

the State Bar's recommendation. (*In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331]; *In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244].) However, we still conduct our own independent review of the record before determining the appropriate discipline in a given case. (*Greenbaum* v. *State Bar, supra,* 43 Cal.3d 543, 550; *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699].)

Under section 6102, subdivision (c), an attorney must be summarily disbarred, regardless of mitigating circumstances, if: (1) an element of his offense involves the intent to deceive or defraud (§ 6102, subd. (c)(1)); (2) the attorney committed the offense while practicing law (§ 6102, subd. (c)(2)).[10] (See *In re Ford, supra,* 44 Cal.3d at p. 816, fn. 6; 1 Witkin, Cal. Procedure (1988 supp.) Attorneys, § 381A, pp. 53-54 [if the conviction meets specified criteria, the attorney must be summarily disbarred when the judgment is final].) The State Bar Court concluded that the first part of the test was satisfied here. ▮▮▮ The record amply supports this finding; petitioner's offenses contain elements of a specific intent to defraud. (See 18 U.S.C. § 1341 [mail fraud, requires specific intent to defraud]; (*United States* v. *Kent* (5th Cir. 1979) 608 F.2d 542, rehg. den. 611 F.2d 882, cert. den. *sub nom. Patrick Petroleum Corp. of Michigan* v. *United States* (1980) 446 U.S. 936 [64 L.Ed.2d 788, 100 S.Ct. 2153]; *United States* v. *Payne* (9th Cir. 1973) 474 F.2d 603; see also 18 U.S.C. § 2314 [fraud in interstate transport, requires intent to defraud]; *United States* v. *Freeman* (5th Cir. 1980) 619 F.2d 1112, cert. den. 450 U.S. 910 [67 L.Ed.2d 334, 100 S.Ct. 2153]; *United States* v. *Long Cove Seafood, Inc.* (2d Cir. 1978) 582 F.2d 159.)

The State Bar Court found that the misrepresentations and abuses that he committed as a deputy attorney general occurred, in "material part," in the course of practicing law and constituted part of his offenses. ▮▮▮ Although the term "practice of law" is not defined in any statute, courts have generally defined it to include appearances in a court proceeding on behalf

dards for Attorney Sanctions as guidelines in his proceeding because his alleged misconduct predated the State Bar's adoption of the standards. Petitioner's argument is misplaced. We have previously found that "the new guidelines may properly be considered in assessing the appropriate disciplinary sanction even for conduct predating the standards." (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1].)

[10] Section 6102, subdivision (c) states in relevant part: "After the judgment of conviction of an offense specified in subdivision (a) has become final . . ., the Supreme Court *shall* summarily disbar the attorney if the conviction is a felony under the laws of California or of the United States which meets both of the following criteria: (1) An element of the offense is the specific intent to deceive, defraud, steal, or make or suborn a false statement. (2) The offense was committed in the course of the practice of law or in any manner such that a client of the attorney was a victim." (Italics added.)

of another party.[11] Petitioner's court appearances in New Jersey and Washington on behalf of Wellington arguably were the practice of law. However, none of petitioner's other activities were. For example, when petitioner used his position as a deputy attorney general to lend credibility to Wellington's financial status, he was essentially acting only as a credit reference. Moreover, petitioner was never found to have participated in the land sale project as an attorney, but rather as a "silent partner." Wellington had his own attorneys.

If the Legislature had intended the term "offense" in section 6102, subdivision (c) to take on a broader meaning, it easily could have included additional terms. Section 6102, subdivision (d) also calls for the imposition of sanctions against an attorney if he is convicted of a crime involving moral turpitude; however, it specifically allows the court to consider the crime as well as the underlying circumstances of the crime: "[I]f . . . the court finds that the crime of which the attorney was convicted, *or the circumstances of its commission,* involved moral turpitude, it should enter an order disbarring the attorney or suspending him or her from practice for a limited time, according to the gravity of the crime and *the circumstances of the case* . . . ." (Italics added.) The comparison of these two provisions strongly suggests that the Legislature intended the term "offense" in section 6102, subdivision (c) to include only the actual offense.

Petitioner's activities as an attorney were only circumstances *related* to his offenses. Therefore section 6102, subdivision (c) was an inappropriate basis for recommending disbarment.

## V. APPROPRIATENESS OF DISBARMENT UNDER SECTION 6102, SUBDIVISION (d)

 Although section 6102, subdivision (c) does not apply to petitioner, we conclude that petitioner should be disbarred under section 6102, subdivision (d).[12] Section 6102, subdivision (d) states that a conviction for a

---

[11] The State Bar Court did not specifically consider what the term "practice of law" includes. Courts have generally defined the term as follows: "[t]he practice of law is the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matters may or may not be [pending] in a court." (*People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 535 [209 P. 363]; see *Crawford* v. *State Bar* (1960) 54 Cal.2d 659, 667-668 [7 Cal.Rptr. 746, 355 P.2d 490]; *People* v. *Sipper* (1943) 61 Cal.App.2d Supp. 844, 846 [142 P.2d 960]; 7 Cal.Jur.3d, Attorneys at Law, § 162.)

[12] The State Bar Court considered standard 3.2 of the State Bar's Standards for Attorney Sanctions as an alternative basis for its recommendation of disbarment. Standard 3.2 requires

felony involving moral turpitude is a sufficient basis for suspension or disbarment. "Under sections 6101 and 6102 of the Business and Professions Code, disbarments, and not suspensions, have been the rule rather than the exception in cases of serious crimes involving moral turpitude, the purpose of the statute being to protect the public, as well as the courts and the legal profession." (*In re Bogart, supra,* 9 Cal.3d 743, 748; *In re Smith* (1967) 67 Cal.2d 460, 462 [62 Cal.Rptr. 615, 432 P.2d 231].)

Section 6102, subdivision (d) requires a finding of moral turpitude. Petitioner contends that instructional error at his criminal trial permitted the jury to find him guilty of a crime without finding moral turpitude or the intent to defraud. He is wrong. The jury was required to find that the petitioner had the intent to defraud in order to convict.[13] Fraud is a "principal element" of moral turpitude. (*In re Schwartz* (1982) 31 Cal.3d 395, 400 [182 Cal.Rptr. 640, 644 P.2d 833, 26 A.L.R.4th 1077]; see *In re Higbie* (1972) 6 Cal.3d 562, 573 [99 Cal.Rptr. 865, 493 P.2d 97].)

To determine whether an attorney should be suspended or disbarred for committing a crime involving moral turpitude, section 6102, subdivision (d) states that the court should consider the "gravity of the crime and the circumstances of the case." The gravity of the crime in this case is readily apparent; petitioner participated in a scheme intended to defraud investors of a significant amount of funds. The circumstances surrounding the commission of petitioner's crimes are also serious. On two separate occasions petitioner misled a judge by making direct misrepresentations. We have frequently considered the act of misleading a court as sufficient grounds in and of itself for discipline. (*Di Sabatino* v. *State Bar* (1980) 27 Cal.3d 159, 162-163 [162 Cal. Rptr 458, 606 P.2d 765]; *Davidson* v. *State Bar* (1976) 17 Cal.3d 570, 574 [131 Cal.Rptr. 379, 551 P.2d 1211]; *Sullins* v. *State Bar* (1975) 15 Cal.3d 609, 620-622 [125 Cal.Rptr. 471, 542 P.2d 631]; *Grove* v. *State Bar* (1965) 63 Cal.2d 312, 315 [46 Cal.Rptr. 513, 405 P.2d 553]; see § 6068, subd. (d).) Petitioner also misled a creditor regarding the prison record of a credit applicant. In addition, there are numerous instances discussed above where petitioner used his position as a deputy attorney

---

disbarment if the attorney has been convicted of a crime involving moral turpitude unless "the most compelling mitigating circumstances clearly predominate."

[13] Petitioner argues that the jury instructions erroneously did not require the jury to find that the victims lost money. (See *McNally* v. *United States* (1987) 483 U.S. 350 [97 L.Ed.2d 292, 107 S.Ct. 2875] [in order to convict someone of violating the mail fraud statute, jury must be instructed that one element of the crime includes a finding that the alleged victim lost money].) Petitioner submitted this issue in a petition for writ of habeas corpus to the federal district court. The district court dismissed the petitioner's motion as meritless. (United States v. Utz, *supra,* No. CR 82 0629 TEH) The court determined *McNally* did not apply to petitioner because evidence from the criminal trial clearly indicated that petitioner defrauded investors of a substantial amount of money.

general, a position of public trust, to seek financial gain. "[P]eople who occupy prominent positions dealing with public confidence have a duty to not misuse their position and their power . . . . The very appearance of it, the likelihood of it appearing, is a matter of public concern, interest, and they [the public] need to be protected from it." (*In re Kristovich* (1976) 18 Cal.3d 468, 476 [134 Cal.Rptr. 409, 556 P.2d 771].) As the State Bar Court noted, petitioner often played "fast and loose" with his position as a deputy attorney general to assist the land fraud scheme. There is little doubt that the crime and the circumstances of its commission are extremely serious.

Petitioner argues that factors in mitigation militate against disbarment. He claims he had no prior disciplinary record and that we should consider this a factor in mitigation. The State Bar Court concluded, based on standard 1.2(e)(i) of the Standards for Attorney Sanctions for Professional Misconduct, that petitioner's lack of prior discipline could not be considered a significant mitigating factor because of the serious nature of his misconduct. We agree with the State Bar Court.

Petitioner also presented witnesses at the State Bar hearing who testified to his good character. The hearing panel did not find their testimony persuasive because they generally had only minimal contact with petitioner over the past few years. The hearing panel also found that petitioner did not present significant evidence of any objective acts to atone for the consequences of his acts. The record supports these conclusions.

Petitioner also asserted that the excessive delay between the time of his suspension and the beginning of the disciplinary hearings should be a mitigating factor. Much of this delay was attributable to petitioner's decision to appeal his conviction. Petitioner did not show he was prejudiced by the delay.

The State Bar Court also determined that petitioner lacked credibility and candor at the hearing and that he did not adequately demonstrate remorse or subsequent rehabilitation. Under section 6102, subdivision (d), the petitioner has not presented any mitigating circumstances which would offset the gravity of his crimes.

After careful consideration, we agree with the review department's recommendation of disbarment. The record indicates that the nature of petitioner's crimes and the circumstances surrounding them are quite serious. Further, petitioner's lack of candor and credibility in these proceedings as well as his unwillingness to acknowledge the serious nature of his misconduct suggest that a suspension is an inadequate deterrent. (See *Cooper* v. *State Bar* (1987) 43 Cal.3d 1016, 1032 [239 Cal.Rptr. 709, 741 P.2d 206].)

After all, the purpose of discipline is to protect the public, not punish the attorney. (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244].) We have no confidence that a lesser discipline would be effective in protecting the public. The record adequately demonstrates that petitioner should be disbarred under section 6102, subdivision (d).

It is ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. This order is effective upon the finality of this opinion.

Petitioner's application for a rehearing was denied May 3, 1989.